UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD A. MAJEWSKI,           : CIVIL NO: **3:CV-05-02396**
            Plaintiff         :
                              : (Judge Munley)
     v.                       :
                              : (Magistrate Judge Smyser)
LUZERNE COUNTY, et al.,        :
            Defendants         :

## REPORT AND RECOMMENDATION

I.  Background and Procedural History.


     The plaintiff, Ronald A. Majewski, commenced this action
by filing a complaint on November 18, 2005.  The plaintiff was
proceeding *pro se* at the time that he filed his complaint.
However, the plaintiff subsequently retained counsel.  The
plaintiff, through counsel, filed an amended complaint on
January 10, 2006.


     The amended complaint names the following thirteen
defendants: 1) Luzerne County; 2) the Luzerne County
Correctional Facility (LCCF); 3) Gene Fischi, the Warden of the
LCCF; 4) Samuel Hyder, a deputy warden at the LCCF; 5) Joseph
Morris, a deputy warden at the LCCF; 6) Rowland Roberts, a
deputy warden at the LCCF; 7) Gregory Skrepenak, a member of

the Luzerne County Prison Board; 8) Todd Vonderheid, a member
of the Luzerne County Prison Board; 9) Steve Urban, a member of
the Luzerne County Prison Board; 10) Wister Yuhas, a member of
the Luzerne County Prison Board; 11) Robert Payne, a member of
the Luzerne County Prison Board; 12) International Laborers'
Union of North America Local 1300 (Union); and 13) Tony
Seiwell, the business agent of the Union.

The plaintiff alleges the following facts in his amended
complaint.

The plaintiff began working as a correctional officer at
the LCCF on or about May 19, 1991. *Amended Complaint at ¶19.*
On March 1, 1994, he sustained a work-related injury. *Id. at
¶20.* The plaintiff underwent surgery. *Id. at ¶21.*
Nevertheless, he had permanent damage which resulted in
significant limitations on his major life activities and caused
him to be disabled. *Id.*

On October 10, 2000, the plaintiff returned to work at the
LCCF as a control booth guard, a position defined as a
sedentary, light-duty position. *Id. at ¶22.* The plaintiff's
co-workers resented his assignment to a light-duty job and they

2

verbally harassed him. *Id. at* ¶23.  On June 4, 2002, the

plaintiff's co-workers filed a grievance against him. *Id. at*

*¶24.*

     On June 11, 2002, the plaintiff met with defendant Fischi

and advised him of the hostile work environment and

discriminatory conduct that was being directed towards him. *Id.*

*at* ¶25.  On June 19, 2002, defendant Fischi received a letter

from the plaintiff's lawyer requesting information on

reasonable accommodations pursuant to the Americans with

Disabilities Act. *Id. at* ¶26.

     On November 15, 2002, the plaintiff was suspended for

three days. *Id. at* ¶27.[1]  The suspension ran from December 2,

2002 through December 4, 2002. *Id.*  The plaintiff was

disciplined in violation of normal practices in the work place.

*Id. at* ¶28.  The plaintiff was denied emergency vacation time

while others were granted emergency vacation time. *Id. at* ¶29.

On December 6, 2002, the plaintiff's attorney advised defendant

Fischi that retaliation and harassment were occurring as a

result of his previous correspondence. *Id. at* ¶30.  The

---

1.  The plaintiff does not allege in the amended complaint what the
purported basis for the suspension was.

3

harassment against the plaintiff continued, and the plaintiff's supervisors participated in and encouraged that harassment. *Id. at* ¶31.

On August 12, 2003, defendant Roberts issued a letter to the plaintiff's lieutenants demanding that the plaintiff be docked of an entire day's pay if he was late for work by as little as fifteen minutes. *Id. at* ¶32.  Others were not so disciplined. *Id.*

On December 7, 2004, the plaintiff was called to the office by Captain Corridoni and ordered by Lieutenant Seeman to take a Breathalyzer test. *Id. at* ¶33.  The Breathalyzer test was administered six to eight times until Lieutenant Seeman got a result. *Id. at* ¶34.  To avoid being terminated, the plaintiff went into rehabilitation and successfully completed that rehabilitation. *Id. at* ¶38.[2]

---

2.  The plaintiff does not state in his amended complaint what the results of the Breathalyzer test were.  He does state that he went into rehabilitation to avoid being terminated.  It is reasonable to infer that the Breathalyzer indicated that the plaintiff had a blood alcohol content.

4

The Breathalyzer machine was not certified and was known to be inaccurate. *Id. at* ¶35.  The LCCF had no policy on either drinking or the use of the Breathalyzer. *Id. at* ¶36.  Other individuals who were obviously intoxicated at work were not treated the same way as the plaintiff was treated. *Id. at* ¶37.

Defendant Union, through defendant Seiwell, did not provide representation to the plaintiff although representation was provided by the Union for other individuals who were not disabled. *Id. at* ¶39.

On January 5, 2005, the plaintiff went out on medical leave. *Id. at* ¶40.  The plaintiff, through the Union, had requested 90 days of medical leave. *Id. at* ¶41.  Defendants Fischi and the LCCF retroactively attempted to place the plaintiff on medical leave beginning on December 7, 2004, the date he had been suspended. *Id. at* ¶42.

The defendants gave the plaintiff a last chance agreement and instructed him to sign it or be terminated. *Id. at* ¶43.

On February 16, 2005 and February 24, 2005, the plaintiff submitted a doctor's note indicating that he could return to work. *Id. at* ¶44.  On March 7, 2005, the County notified the plaintiff that his benefits were stopped. *Id. at* ¶45.  On March 10, 2005, the plaintiff went out on Worker's Compensation. *Id. at* ¶46.

On March 14, 2005, the plaintiff amended his Equal Employment Opportunity Commission (EEOC) complaint and sent his declaration to the EEOC. *Id. at* ¶47.

On April 13, 2005, the plaintiff filed grievances with the Union. *Id. at* ¶48.

On May 6, 2005, the plaintiff received a Notice of Hearing scheduling a hearing for May 12, 2005. *Id. at* ¶ *49.*  The Notice advised the plaintiff that he could not have an attorney at the hearing. *Id.*  On May 10, 2005, defendant Seiwell informed the plaintiff that the Union attorney would not be representing him. *Id. at* ¶50.  On May 12, 2005, a fact-finding hearing was held by defendant Hyder. *Id. at* ¶51.  However, the hearing was concluded before the plaintiff could present his rebuttal. *Id. at* ¶52.

6

On August 31, 2005, the plaintiff received a letter from defendant Fischi recommending his termination.  *Id. at* ¶55.  On September 19, 2005, the Prison Board, without providing a hearing or an opportunity for the plaintiff to defend himself, terminated the plaintiff's employment with the LCCF. *Id. at* ¶56.  No post-termination hearing was held. *Id. at* ¶57.

The amended complaint contains nine counts.  Count I consists of 42 U.S.C. § 1983 claims for violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution against all of the individual defendants.  Count II is a claim under 42 U.S.C. § 1985 against all of the individual defendants.  Count III is a discrimination claim against Luzerne County, the LCCF and the Union pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. 12101, et seq. Count IV is a retaliation claim against Luzerne County, the LCCF and the Union pursuant to the ADA.  Count V is  a claim against all of the defendants pursuant to the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951, et seq.  Count VI is a state law conspiracy claim against all of the individual defendants.  Count VII is a claim against defendants Fischi, Hyder and Morris pursuant to the Family and Medical Leave Act,

7

29 U.S.C. § 2601-et seq.  Count VIII is a state law claim of intentional infliction of emotional distress against all of the defendants.  Count IX is a state law claim of wrongful discharge against Luzerne County, the LCCF and the Union.

On March 3, 2006, defendants Seiwell and the Union filed an answer to the amended complaint.

On March 17, 2006, defendants Luzerne County, LCCF, Fischi, Hyder, Morris, Roberts, Skrepenak, Vonderheid, Urban, Yuhas and Payne (hereinafter the "County defendants") filed a motion to dismiss the amended complaint, and on March 31, 2006, they filed a brief in support of that motion to dismiss.  On May 8, 2006, defendants Seiwell and the Union filed a motion to dismiss the amended complaint, and on May 22, 2006, they filed a brief in support of that motion to dismiss.[3]  After requesting and receiving extensions of time, on June 14, 2006, the plaintiff filed a consolidated brief in opposition to both

---

3.  Since defendants Seiwell and the Union filed an answer to the amended complaint, their motion should have been titled as a motion for judgment on the pleadings rather than as a motion to dismiss. However, there is no material difference in the legal standards applicable to a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) and a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). *Spruill v. Gillis,* 372 F.3d 218, 223 n.2 (3d Cir. 2004).

8

of the pending motions to dismiss.  On July 3, the County
Defendants filed a timely reply brief in support of their
motion to dismiss.

On July 12, 2006, defendants Seiwell and the Union filed a
reply brief in support of their motion to dismiss.  The reply
brief filed by defendants Seiwell and the Union was not timely
filed because it was not filed within the time prescribed by
Local Rule 7.7.  Since it was not timely filed, we will not
consider the reply brief filed by defendants Seiwell and the
Union.

II.  Motion to Dismiss Standard.

A motion to dismiss pursuant to Rule 12(b)(6) challenges
the legal sufficiency of the plaintiff's complaint; the court
must decide whether, even if the plaintiff were able to prove
all of his allegations, he would be unable to prevail.
*Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891
(3d Cir. 1977).  In connection with a Rule 12(b)(6) motion to
dismiss for failure to state a claim upon which relief can be
granted, the burden is on the moving party to show that there
is no actionable claim.  *Johnsrud v. Carter*, 620 F.2d 29, 33

9

(3d Cir. 1980).  When deciding a motion to dismiss, the court must accept all material allegations of the complaint as true and draw all inferences in the light most favorable to the plaintiff.  *Pennsylvania House, Inc. v. Barrett*, 760 F. Supp. 439, 449 (M.D. Pa. 1991).  However, "conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true." *Id*. at 449-50.  A complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988).

Federal Rule of Civil Procedure 8(a)(2) requires no more than that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." "Complaints 'need not plead law or match facts to every element of a legal theory.'" *Weston v. Pennsylvania*, 251 F.3d 420, 429 (3d Cir. 2001)(quoting *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C.Cir. 2000)).  "[A] plaintiff generally need not explicitly allege the existence of every element in a cause of action if fair notice of the transaction is given and the complaint sets

10

forth the material points necessary to sustain recovery."
*Menkowitz v. Pottstown Memorial Medical Center*, 154 F.3d 113,
124 (3d Cir. 1998).  The statement required by Rule 8(a)(2)
"must simply 'give the defendant fair notice of what the
plaintiff's claim is and the grounds upon which it rests.'"
*Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002)(quoting *Conley
v. Gibson*, 355 U.S. 41, 47 (1957)). "This simplified notice
pleading standard relies on liberal discovery rules and summary
judgment motions to define disputed facts and issues and to
dispose of unmeritorious claims." *Id.*

III.  Count I of the Amended Complaint.

     Count I of the amended complaint consists of 42 U.S.C.
§ 1983 claims for violation of the First, Fifth, and Fourteenth
Amendments against all of the individual defendants.

     "Section 1983 imposes civil liability upon any person who,
acting under the color of state law, deprives another
individual of any rights, privileges, or immunities secured by
the Constitution or laws of the United States." *Shuman v. Penn
Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).  Section
1983 "does not create any new substantive rights but instead

11

provides a remedy for the violation of a federal constitutional or statutory right." *Id.* "To state a claim under § 1983, a plaintiff 'must allege both a deprivation of a federally protected right and that this deprivation was committed by one acting under color of state law.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005)(quoting *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997)).

In Count I of the amended complaint, the plaintiff claims that the individual defendants violated the First, Fifth and Fourteenth Amendments.  We will address each of the plaintiff's constitutional claims.  However, before we address the merits of the constitutional claims, we briefly address the issue of whether the plaintiff has sufficiently alleged that defendant Seiwell was acting under color of state law and whether the plaintiff has sufficiently alleged that defendant Seiwell was personally involved in the alleged violations of his rights.

Defendant Seiwell intimates that the plaintiff has not alleged that he acted under color of state law.  Defendant Seiwell is the business agent of the Union and is not a government employee.  As a business agent of a union, defendant

12

Seiwell would generally be considered a private party and not a state actor.

A private party may be liable under § 1983 when "(1) the party actually participates with state officials in an activity which is constitutionally prohibited, or (2) the private party conspires with state officials to violate the constitution." *Smith v. Wambaugh*, 29 F.Supp.2d 222, 227 (M.D.Pa. 1998), *aff'd,* 189 F.3d 464 (3d Cir. 1999). *See also Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions."); *Abbott v. Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998)("[A] private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts "under color of state law" for purposes of § 1983.").

The plaintiff alleges that the defendants separately and in concert acted under color of state law to deprive him of his rights, privileges and immunities under the First, Fifth & Fourteenth Amendments. *Amended Complaint at ¶58*. Accepting this allegation as true, as we must when deciding a motion to

dismiss, we conclude that the plaintiff has sufficiently alleged that defendant Seiwell acted under color of state law.

Defendant Seiwell also argues that the plaintiff has not alleged that he was involved in the alleged violations of the plaintiff's constitutional rights.  However, as indicated above, the plaintiff alleges that the defendants separately and in concert acted under color of state law to deprive him of his rights, privileges and immunities under the First, Fifth & Fourteenth Amendments. *Amended Complaint at ¶58.*  Accepting this allegation as true, we conclude that the plaintiff has sufficiently alleged that defendant Seiwell was involved in violations of his constitutional rights.

Whether the plaintiff will ultimately be able to prove his allegation that the defendants separately and in concert acted under color of state law to derive him of his rights is a question that is not relevant to a decision on the pending motions to dismiss.  That question will have to be determined at a later stage in the proceedings.

We turn now to the plaintiff's constitutional claims.[4]


A. First Amendment.


The plaintiff claims that the defendants violated the First Amendment.  From the plaintiff's brief, it is clear that the plaintiff's First Amendment claim is based on his right as a public employee to speak on matters of public concern.


"A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001). Public employers cannot silence their employees simply because they disapprove of the content of their speech. *Id.* at 194. On the other hand, "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."

---

4.  We note that the individual County Defendants argue that the claims against them in their official capacities must be dismissed because those claims are redundant of the plaintiff's claims against defendant Luzerne County.  The plaintiff responds that he is not claiming liability against the defendants in their official capacities and that he is proceeding against the individual defendants only in their personal capacities.

15

*Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968).  "The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.*

A public employee's claim of retaliation is evaluated under a three-step process. *Green v. Phila. Hous. Auth.,* 105 F.3d 882, 885 (3d Cir. 1997).  First, the plaintiff must establish that the activity in question was protected. *Id.* Second, the plaintiff must establish that the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Pro v. Donatucci*, 81 F.3d 1283, 1288 (3d Cir. 1996).  Lastly, the public employer can rebut the claim by demonstrating that it would have reached the same decision even in the absence of the protected conduct. *Baldassare, supra,* 250 F.3d at 195.

"A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for

16

treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Kutztown,* ___ F.3d ___, ___, 2006 WL 2061145 at *10 (3d Cir. July 26, 2006)(quoting *Garcetti v. Caballos,* 126 S.Ct. 1951, 1958 (2006)).  "If the speech in question is purely personal, it does not fall under the protective umbrella of the First Amendment and public employers are therefore not limited by that guarantee in responding to disruption caused by the expression." *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003).  "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community." *Id.* (quoting *Baldassare, supra,* 250 F.3d at 195).  "[S]peech may involve a matter of public concern if it attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials." *Id.* (quoting *Connick v. Myers,* 461 U.S. 138, 148 (1983)).  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick, supra,* 461 U.S. at 147-48.  "Determining whether a public employee's speech is a matter of public concern is a question of law for the court." *Brennan, supra,* 350 F.3d at 413.

The defendants argue that the plaintiff has not alleged that he spoke on a matter of public concern.  The plaintiff, in response, cites to paragraph 25 of his amended complaint which reads: "On June 11, 2002, the Plaintiff met with the Defendant Gene Fischi and advised him of the hostile work environment and discriminatory conduct being directed towards him." *Amended Complaint at ¶25.*  The plaintiff contends that he spoke out about a hostile environment and discriminatory conduct and that both of those situations constitute a matter of public concern since they are violations of the law and should be corrected.

A public employee speaking about illegal discrimination and harassment may be speaking on matters of public concern. *See e.g. Azzaro v. County of Allegheny,* 110 F.3d 968, 980 (3d Cir. 1997)(holding that report of incident of sexual harassment by an executive assistant to the County Commission was speech on a matter of public concern).  However, not all speech by a public employee regarding discrimination and harassment enjoys constitutional protection. *Id.* (rejecting argument that a grievance about sexual harassment is only a matter of public concern if it includes indications that there is a systemic problem interfering with the public agency's performance of its governmental function and not if the grievance relates solely

18

to the employee's own situation but noting that in rejecting
that argument it is not suggesting that all public employee
complaints about sexual harassment are matters of public
concern).  To determine whether the speech is protected by the
First Amendment, the court must look to the content, form, and
context of the speech. *McKenzie v. Milwaukee County,* 381 F.3d
619, 626 (7th Cir. 2004).

   The allegations in the amended complaint do not reveal the
precise content, form and context of the plaintiff's alleged
speech.  Thus, at this point we can determine whether or not
the plaintiff's alleged speech was on a matter of public
concern.  Nonetheless, the allegations in the amended complaint
provide the defendants with fair notice of what the plaintiff's
claim is and the grounds upon which it rests and we can not say
that the plaintiff can prove no set of facts in support of his
claim which would entitle him to relief.  Accordingly, we
conclude that amended complaint states a § 1983 First Amendment
claim upon which relief can be granted.

B. Fifth Amendment.


The plaintiff states in his brief in opposition to the motions to dismiss that he is not pursuing a Fifth Amendment claim.  It will be recommended that the § 1983 Fifth Amendment claim be dismissed.


C. Fourteenth Amendment.


The Fourteenth Amendment provides, in pertinent part:

> No State shall make or enforce any law which shall
> abridge the privileges or immunities of citizens of
> the United States; nor shall any State deprive any
> person of life, liberty, or property, without due
> process of law; nor deny to any person within its
> jurisdiction the equal protection of the laws."

The defendants argue that the amended complaint fails to state either a procedural due process or substantive due process claim upon which relief can be granted.[5]

---

5.  None of the parties address whether the amended complaint states a § 1983 Fourteenth Amendment equal protection claim upon which relief can be granted.  Therefore, neither will we.

1. Procedural Due Process.

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Kutztown,* ___ F.3d ___, ___, 2006 WL 2061145 at *4 (3d Cir. July 26, 2006)(quoting *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000)).

The plaintiff appears to claim that he had a property interest in his job with the LCCF.

To have a property interest in a job a person must have more that a unilateral expectation of continued employment. *Hill, supra,* 2006 WL 2061145 at *4.  Rather, he must have legitimate entitlement to continued employment. *Id.*  "Whether a person has a legitimate entitlement to - and hence a property interest in - his government job is a question answered by state law." *Id.*  An at-will employee does not have a legitimate entitlement to continued employment because he or she serves solely at the pleasure of the employer. *Id.*

21

The plaintiff does not specifically allege that he had a property interest in his job.  However, the plaintiff alleges that he filed grievances with the Union.  Although the amended complaint does not specifically allege that there was a collective bargaining agreement between the Union and the LCCF, his allegation that he filed grievances leads to an inference that there was a collective bargaining agreement.  A legitimate entitlement to continued employment would have to be based on the terms of the collective bargaining agreement.

The defendants do not contend that the plaintiff did not have a property interest in his job with the LCCF.  Rather, the defendants argue that the collective bargaining agreement provided the plaintiff with all the process that was due to him in connection with his termination.  The defendants rely on the collective bargaining agreement, which the plaintiff had attached to his original complaint but not to his amended complaint.

We must determine whether or not we can consider the collective bargaining agreement in deciding the pending motions to dismiss.

When deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record.  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  However, the court may also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document. *Id.* "A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'" *Lum v. Bank of America,* 361 F.3d 217, 222 n.3 (3d Cir. 2004)(quoting *In re Burlington Coat Factory Sec. Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

The court may consider an undisputedly authentic document on which the plaintiff's claims are based without converting a motion to dismiss into a motion for summary judgment. *Pension Benefit Guar. Corp, supra,* 998 F.2d at 1196.  The reason that a court generally must convert a motion to dismiss to a summary judgment motion if it considers evidence submitted by the defense is to afford the plaintiff an opportunity to respond. *Id.* "When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the

23

document, and the need for a chance to refute evidence is greatly diminished." *Id.* By relying on the document, the plaintiff is on notice that the document will be considered. *Lum, supra,* 361 F.3d at 222 n.3.

Although the plaintiff does not mention the collective bargaining agreement in his amended complaint, we conclude that the collective bargaining agreement is integral to the plaintiff's procedural due process claim because absent the collective bargaining agreement the plaintiff would not have had a property interest in his job with the LCCF. Accordingly, the plaintiff's procedural due process claim is based on the collective bargaining agreement and the court can consider that agreement without converting the pending motions to dismiss into summary judgment motions.

The collective bargaining agreement provides a three step process for resolving grievances. *Doc. 1, Exhibit 14, Article XXXII.* If the grievance is not satisfactorily resolved through the three step process, the Union may submit the matter to arbitration. *Id.*

24

The United States Court of Appeals for the Third Circuit has held that in the public employment context where grievance and arbitration procedures are in place those procedures satisfy due process even if the hearing conducted by the employer on the grievance was biased and even if the employer and Union acted in concert to deprive the employee of a meaningful hearing and of arbitration. *Dykes v. Southeastern PA Transp. Auth.,* 68 F.3d 1564, 1571-72 (3d Cir. 1995). The Court in *Dykes* set forth its reasoning and rationale as follows:

> We have held that under the Pennsylvania Public Employee Relations Act, 43 Pa.Stat.Ann. § 1101.101 *et seq.,* federal labor law governs a challenge to procedures followed in the termination of a public employee. *See Crilly v. SEPTA,* 529 F.2d 1355 (3d Cir. 1976). If a public employee believes that the grievance process was defective, he may seek relief available under state law. Once an employee establishes that a
>> [U]nion has acted in bad faith towards its member[,] . . . the Court of Common Pleas sitting in equity may order completion of the arbitration procedure. . . . Under this procedure a wrongfully discharged employee receives precisely the treatment all the employees in the unit are entitled to under the collective bargaining agreement.
> *Martino v. Transport Workers Union of Philadelphia, Local 234*, 505 Pa. 391, 409-410, 480 A.2d 242 (1984). Where a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, we have held that those procedures satisfy due process requirements "even if the hearing conducted by the Employer . . . [was] inherently biased." *Jackson v. Temple University,* 721 F.2d 931 (3d Cir.1983).

25

In *Jackson,* a public employee filed suit pursuant to 42 U.S.C. § 1983 alleging that his due process rights were infringed by the biased nature of the grievance hearings conducted by Temple University following his discharge and by the Union's refusal to bring the matter to arbitration. We affirmed the district court's dismissal of the section 1983 claim, agreeing with the district court that no precedent, "binding or otherwise," has "recognized a section 1983 action where a union has refused to take to arbitration an employee's claim against a public employer." 721 F.2d at 933 n. 1. We noted that

> [t]he Union, as the sole and exclusive bargaining representative had the ultimate power to make a fair and responsible determination as to whether it would invoke the arbitration proceeding available under the collective bargaining agreement. The right to proceed to arbitration provided . . . an adequate due process safeguard even if the hearing conducted by the Employer earlier had been inherently biased.

*Id.* at 933. Finally, we stated that, "[t]he right to arbitrate provided ··· essentially the same due process safeguards which would have been available through an unbiased hearing. There is no evidence suggesting that the arbitration proceeding would have been biased. . . . Therefore, there is no due process violation in this case." *Id.* at 933 n. 2.

Our opinion in *Jackson* was relied upon by our sister court in *Armstrong v. Meyers,* 964 F.2d 948, 951 (9th Cir.1992). There a discharged university employee filed suit pursuant to section 1983, alleging that he had been deprived of property without due process of law. In affirming a grant of summary judgment in favor of the defendants, the Court of Appeals for the Ninth Circuit held that, "A public employer may meet its obligation to provide due process through grievance procedures established in a collective bargaining agreement, provided, of course, that those procedures satisfy due process." *Id.* at 950. The court then turned to the following balancing test established by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903. In order to determine whether a particular

26

procedure meets due process requirements, three factors must be considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Applying these factors in the public employee context, our sister court of appeals recognized that an employee's interest in retaining his job is "substantial."

> However, the risk of an erroneous determination in the grievance/arbitration procedure is not large, and the value of additional or substitute procedures is not great. Grievance/arbitration procedures are a universally accepted method of resolving employment disputes, included in countless collective bargaining agreements. Although [the] union could and did decide not to take [the employee's] claim to arbitration, it did so under a duty of fair representation, and may be sued for breach of that duty if its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."

964 F.2d at 950 (citation omitted). In holding that the grievance/arbitration procedures in place were adequate to meet the demands of due process, the court recognized "the strong public and private interest in maintaining an effective grievance/arbitration process to settle disputes between employers and employees." *Id.* at 951.

We are convinced that the reasoning in *Armstrong v. Meyers* applies with equal force in this case. Even where, as here, a plaintiff alleges that the defendants acted in concert to deprive him both of a meaningful hearing and of arbitration, we believe

that the administrative process in place has
incorporated safeguards adequate to resolve these
allegations in a manner consistent with the demands
of due process. Significantly, Dykes could have asked
a court of common pleas to order arbitration pursuant
to the collective bargaining agreement, thereby
assuring him of the due process to which he was
entitled. Because he chose not to do so, Dykes is
unable to prove a violation of 42 U.S.C. § 1983 by
SEPTA or by Local 234. We conclude, therefore, that
Count II of Dykes' complaint was appropriately
dismissed for failure to state a cause of action.

*Id.* at 1571-72.

As in *Dykes,* in the instant case there was a collective

bargaining agreement which provided for a grievance process and

an arbitration process and the plaintiff could have asked a

Pennsylvania court of common pleas to order arbitration.

Pursuant to *Dykes,* the plaintiff was provided with all the

process that he was due.

The plaintiff seeks to distinguish *Dykes* by arguing that

the grievance procedures in place in this case were not

adequate to meet the demands of due process and that the

Union's conduct was so biased and untrustworthy that he has

sued the Union.  There is nothing, however, in the collective

bargaining agreement to indicate that the grievance and

arbitration process do not meet the demands of due process.

28

*Dykes* itself was a case where the employee had sued both his employer and union on the basis that they had acted in concert to deprive him of a meaningful hearing and arbitration.  The Court in *Dykes* concluded that due process was satisfied because the employee could have asked a court of common pleas to order arbitration pursuant to the collective bargaining agreement. Similarly, in this case the plaintiff could have requested a court of common pleas to order arbitration.

The plaintiff argues that arbitration in the instant case would have been fruitless absent the ability of the arbitration to address the issues of discrimination, illegal search and freedom of speech.  Although the arbitration may not have resolved the plaintiff's constitutional claims, the arbitration would have provided the plaintiff with an opportunity to present his side of the story, and to have the opportunity to do so is what due process requires.

Given that the collective bargaining agreement in this case provided for a grievance process and arbitration process and that the plaintiff could have asked a Pennsylvania court of common pleas to order arbitration, the plaintiff was provided

with due process.  Accordingly, it will be recommended that the plaintiff's procedural due process claim be dismissed.

     2. Substantive Due Process.

     "To prevail on a substantive due process claim . . . 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'" *Id.* at *4 n.5 (quoting *Nicholas v. Pennsylvania State Univ.,* 227 F.3d 133, 139-140 93d Cir. 2000)).  Unlike in the procedural due process context, whether a property interest is protected for purposes of substantive due process is a question that is not answered by reference to state law. *Id.*  "Rather, for a property interest to be protected for purposes of substantive due process, it must be "fundamental" under the United States Constitution." *Id.*

     The United States Court of Appeals has explicitly held that "public employment is not a fundamental right entitled to substantive due process protection." *Id.* (citing *Nicholas, supra,* 227 F.3d at 142-143).  Accordingly, the amended complaint fails to state a substantive due process claim upon

30

which relief can be granted, and we will recommend that the plaintiff's substantive due process claim be dismissed.

D. Fourth and Sixth Amendments.

In the introductory paragraph of his amended complaint, the plaintiff mentions the Fourth and Sixth Amendments. However, the plaintiff does not mention either the Fourth or Sixth Amendment in Count I of his amended complaint or in any other count of the amended complaint.

In his brief, the plaintiff indicates that he is not pursuing a Sixth Amendment claim.  The plaintiff also indicates in his brief that he is pursuing a Fourth Amendment claim on the basis of the Breathalyzer test.  Since the Fourth Amendment is not mentioned in Count I of the amended complaint, we conclude that there is no Fourth Amendment claim stated in the amended complaint.

IV.   Count II of the Amended Complaint.

Count II of the amended complaint is a claim under 42 U.S.C. § 1985 against all the individual defendants.

31

42 U.S.C. § 1985(3) "permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Farber v. City of Paterson,* 440 F.3d 131, 134 (3d Cir. 2006)(quoting § 1985(3)). The United States Supreme Court has clarified that § 1985(3) is limited to conspiracies based on racial or some other class based invidiously discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)("The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."). To state a claim upon which relief can be granted under § 1985(3) a plaintiff must allege: (1) a conspiracy; (2) motivated by racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir. 1997).

The plaintiff alleges in his amended complaint that the defendants conspired against him to dismiss him because of his disability and non-work related handicap, that they deprived him of the rights and privileges secured by the First, Fifth and Fourteenth Amendments, that in conspiring against him they met and communicated at several and diverse times and places, that they agreed to harass him in an effort to have him quit, that they kept a book on him and engaged in conduct that hindered him in the fulfillment of his job, that they manufactured charges which they knew or should have known were improper and illegal in order to terminate him, and that the defendants' action resulted in his termination. *Amended Complaint at ¶ 59-64.*

The defendants contend that the plaintiff is not a member of a protected class under § 1985(3).  Since the plaintiff alleges that the defendants conspired to dismiss him because of his disability, we must determined whether the disabled are a class within the meaning of § 1985(3).

The United States Supreme Court has not decided whether or not persons who are disabled constitute a class for purposes of § 1985(3).  The United States Court of Appeals for the Third

33

Circuit has held that the mentally retarded do constitute a class whose members are entitled to the protection afforded by § 1985(3). *Lake, supra,* 112 F.3d at 686. However, the Third Circuit has left open the question whether those who are physically disabled or handicapped constitute a class whose members are entitled to the protections of § 1985(3). *Id. at n.5* ("Because the facts of this case do not require us to do so, we decline to define the class protected more broadly to include a wider range of handicaps or the handicapped in general.  Although we can envision other cases which might fall within the analysis which we set forth here, we need not address them here.").

Although the Third Circuit in *Lake* left open the question whether those who are disabled are a class for purposes of § 1985(3), *Lake* is the most applicable precedent and, accordingly, we will examine it is some detail.

The Third Circuit in *Lake* indicated that "[t]here are no precise parameters defining the boundaries of "class" within the meaning of section 1985(3)."  *Lake, supra,* 112 F.3d at 685. The Court recognized that the lack of definitional standards for identification of classes protected by § 1985(3) has

34

resulted in a split of authority on the question whether the handicapped, as a class, are entitled to the protections of § 1985(3).  *Id. at 686.*

The Third Circuit in *Lake* held that the mentally retarded, as a class, are entitled to the protection afforded by § 1985(3).  *Id.*  The Court started its analysis by indicating that in a past case holding that women as a class are protected by § 1985(3) it had declined to limit the reach of § 1985(3) to its historical roots.  *Id.*  The Court indicated that it remains "convinced that the scope of section 1985(3) is not fixed as of *any* given point in time, but must be subject to reinterpretation as times and circumstances require [.]" *Id. at 687.*  It stated that "'[t]o ensure that private conspiracies do not strip other citizens of the equal protection of the laws, we must be particularly concerned with those discrete and insular minorities who have traditionally borne the brunt of prejudice in our society.'" *Id.* (quoting Ken Gormley, *Private Conspiracies and the Constitution; A Modern Version of 42 U.S.C. Section 1985(3),* 64 Tex.L.Rev. 527, 575 (1985)).

In *Lake,* the Third Circuit summarized the reasons for its prior conclusion in *Novotny v. Great American Fed. Sav. & Loan Assoc.,* 584 F.2d 1235 (3d Cir. 1978), that women, as a class, are protected by § 1985(3):

> In *Novotny,* we relied on Congress'
> characterization of classifications based on gender
> as inherently invidious and upon the immutable nature
> of gender to conclude that women, as a class, were
> entitled to the protection of section 1985(3):
>> [S]ex, like race and national origin, is an
>> immutable characteristic determined by the
>> accident of birth . . .  and the sex
>> characteristic frequently bears no relation
>> to ability to perform or contribute to
>> society.  Thus, to deprive members of a
>> class founded on gender of equal protection
>> or equal privileges and immunities without
>> any justification is to act in an
>> irrational and odious manner hence, with an
>> invidiously discriminatory manner.

*Id.* The Court then determined that the reasons for concluding that women, as a class, are entitled to the protection of § 1985(3) apply with equal force to the mentally retarded.  The Court reasoned and held:

> When the language and intent of section 1985(3)
> are examined in light of the relatively recent
> recognition of current and historic prejudice
> directed toward the handicapped, it is clear that
> much of our discussion of gender discrimination in
> *Novotny* applies with equal force. Discrimination
> based on handicap, including mental handicap, like
> that based on gender, often rests on immutable
> characteristics which have no relationship to
> ability. Where this is the case, we are convinced
> that the discrimination is invidious and that the
> reach of section 1985(3) is sufficiently elastic that

36

the scope of its protection may be extended. In
reaching this conclusion we are influenced by a
number of factors which lie outside our own
conjecture or analysis. We begin with the explicit
statement of Congress itself. In enacting the
Americans With Disabilities Act, Congress found that:

> [I]ndividuals with disabilities are a
> discrete and insular minority who have been
> faced with restrictions and limitations,
> subjected to a history of purposeful
> unequal treatment, and relegated to a
> position of political powerlessness in our
> society, based on characteristics that are
> beyond the control of such individuals and
> resulting from stereotypic assumptions not
> truly indicative of the individual ability
> of such individuals to participate in, and
> contribute to, society.

42 U.S.C. § 12101(a)(7). Increasingly, legislators
and courts have recognized that:

> The history of discrimination against
> individuals with disabilities, while less
> noted than racial or sex discrimination, is
> no less a story of a group that has
> traditionally suffered not only physical
> barriers but the badge of inferiority
> emplaced by a society that often shuns
> their presence.

*Trautz*, 819 F.Supp. at 294-95. We note, too, the
analyses of those commentators which point out that
the discrimination documented against the handicapped
in general has been directed particularly at the
mentally retarded in the context of involuntary
sterilization. See generally Cepko, *Involuntary
Sterilization of Mentally Disabled Women*, 8 Berkeley
Women's L.J. 22 (1993); Estacio, *Sterilization of the
Mentally Disabled in Pennsylvania: Three Generations
Without Legislative Guidance Are Enough*, 92 Dick.
L.Rev. 409 (1988); and Scott, *Sterilization of
Mentally Retarded Persons: Reproductive Rights and
Family Privacy*, 1986 Duke L. J. 806.

Having established in *Novotny* that the reach of
section 1985(3) is not fixed at any given point in
time, we cannot conclude, in light of these
statements by Congress and research compiled by

> academicians, that the mentally retarded are excluded
> from section 1985(3) protection. We borrow from
> *Novotny* to frame our holding here: "The fact that a
> person bears no responsibility for [a handicap],
> combined with the pervasive discrimination practiced
> against [the mentally retarded] and the emerging
> rejection of [this discrimination] as incompatible
> with our ideals of equality convince[s] us that
> whatever the outer boundaries of the concept, an
> animus directed against [the mentally retarded]
> includes the elements of a 'class-based invidiously
> discriminatory' motivation." *Novotny,* 584 F.2d at
> 1243. The plaintiffs have succeeded in stating a
> cause of action pursuant to 42 U.S.C.1985(3).

*Id. at 687-88 (footnotes omitted).*


Like the mentally retarded, other classes of disabled

people may fall under the protection of § 1985(3).  However, we

can find no basis to expand the protections of § 1985(3) to

such a broadly defined class as the "disabled" in general, and

the plaintiff has not pointed out a more narrow class to which

he belongs.  We conclude that the decision in *Lake* should not

be expanded to include all persons having a disability. *But see*

Gabriella A. Davi, *A Progression Toward Freedom: Protecting the*

*Disabled Under the Ku Klux Klan Act,* 20 Cardozo L.Rev. 1019,

1057-1062 (1999)(advocating use of the definition of disability

found in the ADA to define the disabled as a class entitled to

protection under § 1985(3)).  Accordingly, it will be

recommended that Count II of the amended complaint be dismissed.

V.    Count III of the Amended Complaint.

Count III of the amended complaint is a discrimination claim against Luzerne County, the LCCF and the Union pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. 12101, et seq.

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

To establish a *prima facie* case of discrimination under the ADA, the plaintiff must demonstrate that he: 1) has a disability; 2) is a qualified individual; and 3) has suffered an adverse employment decision as a result of his disability. *Skerski v. Time Warner Cable Co.,* 257 F.3d 273, 278 (3d Cir. 2001).

39

The plaintiff alleges in his amended complaint that the defendants individually and jointly discriminated against him because of his disability, to wit his back injury and the perception that he was an alcoholic, with the ultimate goal of either having him quit or being terminated. *Amended Complaint at ¶65.* The plaintiff also alleges that the defendants terminated him because of his non-work related disabilities and in retaliation for having engaged in conduct protected by the EEOC and Pennsylvania Human Relations Commission (PHRC). *Id. at ¶66.*

The County defendants argue that the plaintiff was not a qualified individual under the ADA because he was a diagnosed alcoholic undergoing intensive treatment for his alcoholism. The Union argues that the plaintiff was not a qualified individual under the ADA because he could not possibly perform the essential functions of the job if he were to show up for work intoxicated.  In connection with the pending motions to dismiss, the court can not make a determination whether or not the plaintiff was in fact a qualified individual under the ADA. That is a determination that will have to be made either at trial or, if there are no material factual disputes, in

connection with a summary judgment motion.  Given that the
plaintiff alleges in the amended complaint that the defendants
discriminated against him and terminated him because of his
disabilities, we conclude that the plaintiff has stated an ADA
discrimination claim upon which relief can be granted.

The plaintiff seeks punitive damages in Count III of the
amended complaint.  We agree with the County defendants that
punitive damages are not recoverable against a municipality
under the ADA. *See* 42 U.S.C. § 1981a(b)(1) (providing that
punitive damages may be recovered under this section against a
respondent "other than a government, government agency or
political subdivision.").  Accordingly, it will be recommended
that the plaintiff's request for punitive damages against
defendants Luzerne County and the LCCF in Count III be
dismissed.

VI.   Count IV of the Amended Complaint.

Count IV of the amended complaint is a retaliation claim
against Luzerne County, the LCCF and the Union pursuant to the
ADA.

41

The ADA contains an anti-retaliation provision.  The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a). "Thus, it is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA." *Williams v. Philadelphia Housing Auth. Police Dept.,* 380 F.3d 751, 758-59 (3d Cir. 2004).

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."  *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir. 1997).

The plaintiff alleges in the amended complaint that the defendants individually and jointly retaliated against him for having engaged in protected activity with the EEOC and PHRC. *Amended Complaint at ¶67.*   The plaintiff has stated a

retaliation claim under the ADA upon which relief can be granted.

The plaintiff seeks punitive damages in Count IV of the amended complaint.  As indicated above, punitive damages are not recoverable against a municipality under the ADA. Accordingly, it will be recommended that the plaintiff's request for punitive damages against defendants Luzerne County and the LCCF in Count IV be dismissed.

VII.  Count V of the Amended Complaint.

Count V of the amended complaint is a claim against all of the defendants pursuant to the Pennsylvania Human Relations Act (PHRA), 43 Pa.C.S.A. § 951, et seq.  The plaintiff alleges in the amended complaint that the defendants individually and jointly acted to violate the plaintiff's rights under the PHRA causing a hostile work environment and that they discriminated against him because of his non-work related disability and retaliated against him because he engaged in protected activity with the EEOC and PHRC. *Amended Complaint at ¶ 68.*

Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts, including the ADA. *Salley v. Circuit City Stores, Inc.,* 160 F.3d 977, 979 n.1 (3d Cir. 1998).  The Third Circuit has held that a claim under the PHRA is coextensive with a claim under the ADA. *Id.*

We have already concluded that the amended complaint states ADA claims upon which relief can be granted. Accordingly, we conclude that the amended complaint states a PHRA claim upon which relief can be granted.

Defendants Seiwell and the Union argue that there are no allegations in the amended complaint against them that constitute retaliation or discrimination and that the plaintiff has not alleged that any complaint was filed with the EEOC or PHRC naming them.  However, the plaintiff does allege in the amended complaint that the defendants discriminated and retaliated against him.  He also alleges that he filed a complaint with the EEOC, which was cross-filled with the PHRC, and that he has fulfilled all of the administrative prerequisites by having received a right to sue letter.  We must accept these allegations as true.  The defendants can challenge the factual veracity of the plaintiff's allegations

44

at a later stage of the proceeding but not in connection with a
motion to dismiss the amended complaint.

VIII. Count VI of the Amended Complaint.

Count VI of the amended complaint is a state law
conspiracy claim against all of the individual defendants.

"In order to state a cause of action for civil conspiracy
under Pennsylvania law, a plaintiff must allege: (1) a
combination of two or more persons acting with a common purpose
to do an unlawful act or to do a lawful act by unlawful means
or for an unlawful purpose; (2) an overt act done in pursuance
of the common purpose; and (3) actual legal damage." *Kline v.
Security Guards, Inc.,* 386 F.3d 246, 262 (3d Cir. 2004).

The plaintiff alleges in the amended complaint that the
defendants met and openly discussed the charges and claims that
were going to be made against him in an effort to have him
resign or, in the alternative, to have him terminated. *Amended
Complaint at ¶70.* The plaintiff alleges that in furtherance of
their plan, the defendants acted in concert and reviewed and
discussed the efforts they would become involved in in order to

45

establish the false charges against him that resulted in his termination. *Id. at ¶71.* The plaintiff alleges that the defendants engaged in illegal conduct and deprived him of his rights, privileges and immunities under the First, Fifth, and Fourteenth Amendments and the ADA. *Id. at ¶69.* The plaintiff also alleges that the defendants retaliated against him for having engaged in protected activity for the EEOC and PHRC. *Id.*

Defendant Seiwell and the Union contend that the plaintiff admits in the amended complaint that he has no knowledge or well-founded belief of the existence of any meetings between the defendants or a basis for a conspiracy. This is not a reasonable construction of the allegations in the amended complaint. We conclude that the amended complaint states a state law conspiracy claim upon which relief can be granted.

IX.   Count VII of the Amended Complaint.

Count VII of the amended complaint is a claim against defendants Fischi, Hyder and Morris pursuant to the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601-et seq.

"The primary purposes of the FMLA are to 'balance the demands of the workplace with the needs of families' and 'to entitle employees to take reasonable leave for medical reasons.'" *Callison v. Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).  "The FMLA endeavors to accomplish these purposes 'in a manner that accommodates the legitimate interests of employers.'" *Id.* (quoting 29 U.S.C. § 2601(b)(3)).

The FMLA "creates a series of prescriptive substantive rights for eligible employees, often referred to as the "entitlement" or "interference" provisions which set floors for employer conduct." *Id.*  Eligible employees are entitled to a total of twelve weeks of leave during any twelve-month period if the employee has a serious health condition that makes the employee unable to perform the functions of his or her position. *Id.*  Following a qualified absence, the employee is entitled to be reinstated to his or her former position or an alternative one with equivalent pay, benefits and working conditions. *Id.*  "Additionally, the FMLA provides protection against discrimination based on the exercise of these rights, often referred to as the "discrimination" or "retaliation" provisions." *Id.*  "Employers may not 'use the taking of FMLA leave as a negative factor in employment actions, such as

47

hiring, promotions or disciplinary actions.'" *Id.* (quoting 29 C.F.R. § 825.220(c)).

The plaintiff alleges that the defendants denied him use of family medical leave although he was injured and had formally requested that he be allowed to utilize the protections of the FMLA. *Amended Complaint at ¶72.*

The defendants contend that the plaintiff's allegation that he was denied the use of family medical leave is inane. When deciding a motion to dismiss, the court must accept the material allegations of the complaint as true. Characterizations of the allegations stated to persuade the perspective of the fact finder are best reserved for the fact finding phase.

The defendants also contend that the allegation in the amended complaint that the defendants denied the plaintiff use of family medical leave although he was injured and had formally requested that he be allowed to utilize the protections of the FMLA is belied by other allegations in the amended complaint and that those allegations indicate that the plaintiff was granted the full three months of leave required

48

under the FMLA.  The defendants cite to paragraph 40 of the
amended complaint in which the plaintiff alleges that he went
out on medical leave on January 5, 2005.  However, paragraph 40
can not be read in isolation.  In paragraph 41 of the amended
complaint the plaintiff alleges that he had requested 90 days
of medical leave, and in paragraph 42 the plaintiff alleges
that defendants Fischi and the LCCF retroactively attempted to
place the plaintiff on medical leave beginning on December 7,
2004, the date he had been suspended.  It very well might be
that the facts will show that the plaintiff was granted all the
leave he was entitled to under the FMLA.  However, a reasonable
inference from the allegation in paragraph 42 is that the
defendants incorrectly attempted to place the plaintiff on
medical leave retroactive to December 7, 2004 when the
plaintiff's medical leave should have started at some other
date.  Drawing all inferences in the light most favorable to
the plaintiff, as we must when deciding a motion to dismiss, we
can not say that the plaintiff has failed to state a FMLA claim
upon which relief can be granted.

X.    Count VIII of the Amended Complaint.

Count VIII of the amended complaint is a state law claim of intentional infliction of emotional distress against all of the defendants.

The Restatement (Second) of Torts § 46(1) defines the tort of intentional infliction of emotional distress as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."   The Pennsylvania Supreme Court has not expressly recognized a cause of action for intentional infliction of emotional distress and has not formally adopted § 46 of the Restatement.  However, without deciding whether a cause of action for intentional infliction of emotional distress is recognized in Pennsylvania, it has cited the Restatement as setting forth the minimum elements necessary to sustain such a cause of action. *Taylor v. Albert Einstein Medical Center,* 754 A.2d 650, 652 (Pa. 2000).

To be actionable the "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)(quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super.Ct. 1987)). "Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct." *Id.* (citing for example *Papieves v. Lawrence,* 263 A.2d 118 (Pa. 1970) (defendant, after striking and killing plaintiff's son with automobile and failing to notify authorities or seek medical assistance, buried body in a field where it was discovered two months later and returned to parents); *Banyas v. Lower Bucks Hosp.,* 437 A.2d 1236 (Pa.Super.Ct. 1981)(defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to the plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979)(defendant's team physician released to press information that the plaintiff was suffering from a fatal disease, when physician knew such information was false)). Recovery for the tort of intentional infliction of emotional distress is reserved for "only the most clearly desperate and ultra extreme conduct." *Id.* at 754.

51

We conclude that the conduct by the defendants, as alleged by the plaintiff, was not so outrageous in character and so extreme in degree as to be actionable in a claim for intentional infliction of emotional distress.  Accordingly, it will be recommended that the plaintiff's claim for intentional infliction of emotional distress be dismissed.

XI.   Count IX of the Amended Complaint.

Count IX of the amended complaint is a state law claim of wrongful discharge against Luzerne County, the LCCF and the Union.

Defendant Union contends that the amended complaint fails to state a wrongful discharge claim upon which relief can be granted against it because it did not employee the plaintiff and, therefore, it could not have discharged him.  Given the plaintiff's allegations that the defendants conspired to have him terminated, we can not say that the amended complaint fails to state a wrongful discharge claim upon which relief can be granted against the Union.

X.     Recommendations.


        Based on the foregoing, it is recommended that the

motion (doc. 28) to dismiss filed by the County defendants be

granted in part and denied in part and that the motion (doc.

36) to dismissed filed by defendant Seiwell and the Union be

granted in part and denied in part.  It is recommended that the

Fifth Amendment, procedural due process and substantive due

process claims in Count I be dismissed, that the 42 U.S.C.

§ 1985(3) claim contained in Count II be dismissed, that the

requests for punitive damages against defendants Luzerne County

and LCCF in Counts III and IV be dismissed, and that the

intentional infliction of emotional distress claim in Count X

be dismissed.  It is recommended that the motions to dismiss

otherwise be denied and that the case be remanded to the

undersigned for further proceedings.



                                    /s/ J. Andrew Smyser
                                    J. Andrew Smyser
                                    Magistrate Judge

Dated: August 8, 2006.