# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD A. MAJEWSKI,** | : | **No. 3:05cv2396** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | **(Magistrate Judge Smyser)** |
| | : | |
| **LUZERNE COUNTY, LUZERNE** | : | |
| **COUNTY CORRECTIONAL FACILITY,** | : | |
| **GENE FISCHI, SAMUEL HYDER,** | : | |
| **JOSEPH MORRIS, TONY SEIWELL,** | : | |
| **ROWLAND ROBERTS,** | : | |
| **INTERNATIONAL LABORER'S** | : | |
| **UNION OF NORTH AMERICA LOCAL** | : | |
| **1300, GREGORY SKREPENAK,** | : | |
| **TODD VONDERHEID, STEVE URBAN,** | : | |
| **WISTER YUHAS, and** | : | |
| **ROBERT PAYNE,** | : | |
| **Defendant s** | : | |

## Memorandum

Before the court are plaintiff's objections (Doc. 48) to the report and

recommendation of Magistrate Judge J. Andrew Smyser (Doc. 47) in this case.

Having been fully briefed, the matter is ripe for disposition.

**Background**

This case arises out of the plaintiff's experiences as an employee at the

Luzerne County Correctional Facility (LCCF).

On January 9, 2006, plaintiff filed an amended complaint, alleging

discrimination and retaliation under the Americans with Disabilities Act (ADA), 42

U.S.C. § 12101, *et seq.*, the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601, *et seq.*, the Pennsylvania Human Relations Act, 43 P.S. § 955(a) *et seq.*, and violations of the plaintiff's constitutional rights under 42 U.S.C. §§ 1983 and 1985. (See Amended Complaint (Doc. 9) at ¶ 1).

Plaintiff began working for Defendant Luzerene County Correctional Facility as a Correctional Officer in May 1991. (Id. at ¶ 19).  On March 1, 1994, he suffered an injury while restraining a prisoner.  (Id. at ¶ 20).  That injury required surgery, and plaintiff suffered permanent damage which limited major life activities and caused him to become disabled.  (Id. at ¶ 21).  He returned to work on October 10, 2000. (Id. at ¶ 22).  Upon this return to work, plaintiff assumed a job as a Control Booth Guard, which the defendants defined as "a sedentary-light duty position."  (Id.). Plaintiff's coworkers, resentful of this assignment, began harassing him verbally (Id. at ¶ 23).  On June 4, 2002, these coworkers filed a grievance against the plaintiff. (Id. at ¶ 24).  A week later, plaintiff met with his supervisor, Defendant Gene Fischi, and complained of discrimination and a hostile work environment.  (Id. at ¶ 25).

Plaintiff's lawyer sent a letter to Fischi on June 12, 2002, seeking accommodations for plaintiff's disability under the ADA.  (Id. at ¶ 26).  Subsequent to receiving this letter, defendants on November 15, 2002 suspended plaintiff from employment for three days, running from December 2, 2002 to December 4, 2002. (Id. at ¶ 27).  Such discipline was not a normal practice at the LCCF.  (Id. at ¶ 28). The facility also denied plaintiff emergency vacation time, though others not in the

2

same "protected class" were granted such leave.  (Id. at ¶ 29).  Plaintiff's attorney on December 6, 2002, again complained to warden Fischi of retaliation and harassment for his previous complaints.  (Id. at ¶ 30).  These complaints did not end the harassment of the plaintiff.  (Id. at ¶ 31).  In fact, plaintiff's supervisors "participated in and encouraged" this behavior.  (Id.).

Plaintiff alleges that on August 12, 2003, Defendant Roberts issued a letter to plaintiff's supervisors, ordering that plaintiff be docked an entire day's pay if he arrived as little as fifteen (15) minutes late for work.  (Id. at ¶ 32).  Others were not disciplined in the same way.  (Id.).  On December 7, 2004, two supervisors ordered plaintiff to take a breathalyzer examination at the workplace.  (Id. at ¶ 33).  Supervisors administered the test six to eight times, eventually receiving a positive result.  (Id. at ¶ 34).  The machine supervisors used to administer this test was known to be inaccurate.  (Id. at ¶ 35).  Plaintiff contends that defendants had no workplace policy on drinking or breathalyzer testing, and that other workers who were obviously intoxicated were treated differently from the plaintiff.  (Id. at ¶¶ 36-37).  To avoid termination after this positive test, plaintiff underwent alcohol rehabilitation treatment.  (Id. at ¶ 38).  He completed the program successfully.  (Id.)

Plaintiff also alleges that the defendant union, through its agent Defendant Seiwell, failed to provide the plaintiff with representation in various disciplinary actions.  (Id. at ¶ 39).  The union had represented other, non-disabled, members in similar proceedings.  (Id.).  On January 5, 2005, plaintiff took medical leave,

requesting a ninety-day absence.  (Id. at ¶¶ 40-41).  The Defendant Warden and

Correctional Institution attempted to place plaintiff on medical leave retroactive to

December 7, 2004, a date when the plaintiff had been suspended from work.  (Id. at

¶ 42).  Sometime after that date, defendants gave plaintiff notice of a "last chance"

agreement, and told him to sign the agreement or face termination.  (Id. at ¶ 43).

     After receiving this notification, plaintiff on February 16 and 24, 2005

submitted doctor's notes to his employer that indicated he could return to work.  (Id.

at ¶ 44).  Plaintiff was not able to return to work, however, and began to receive

Workmen's Compensation on March 10, 2005.  (Id. at ¶ 46).  Shortly thereafter he

filed a complaint with the Equal Employment Opportunity Commission.  (Id. at ¶ 47).

On April 13, 2005, the plaintiff filed union grievances with Defendant Seiwell.  (Id. at

¶ 48).  Though these grievances eventually resulted in a hearing conducted by

Defendant Hyder, plaintiff's union did not provide him with representation at the

hearing, and plaintiff was not allowed to bring his own attorney to the hearing.  (Id. at

¶¶ 49-51).  The plaintiff did not have an opportunity to rebut the evidence against

him at this hearing.  (Id. at ¶ 52).  The Prison Board scheduled a subsequent

hearing, but cancelled it.  (Id. at ¶ 53).  The Union and Defendant Seiwell continued

to urge plaintiff to sign a last chance agreement, but plaintiff did not do so.  (Id. at ¶

54).  On August 31, 2005, plaintiff received a letter from Defendant Fischi

recommending his termination.  (Id. at ¶ 55).  Plaintiff lost his job on September 19,

2005, without an opportunity for a hearing either before or after his termination.  (Id.

at ¶¶ 56-57).

On January 9, 2006, plaintiff filed an amended complaint (See Amended complaint (Doc. 9)).  The complaint raises eight counts.  (Id.).  First, plaintiff raises a claim under 42 U.S.C. § 1983, alleging that the defendants violated his First, Fifth and Fourteenth Amendment rights.  (Id. at ¶ 58).  Plaintiff also alleges that the defendants conspired to deprive him of these constitutional rights and to retaliate against him for engaging in protected activity, in violation of 42 U.S.C. § 1985.  (Id. at ¶¶ 59-60).  The alleged conspiracy includes both coordinated efforts to force plaintiff to quit his job and a later effort to "manufacture" untrue grounds for plaintiff's termination.  (Id. at ¶¶ 62-63, 69-71).[1]  Plaintiff's complaint includes claims under the Americans with Disabilities Act.  (Id. at ¶ 65).  Plaintiff alleges that his termination came as a result of his disabilities and in retaliation for filing complaints under federal and state law.  (Id. at ¶¶ 66, 67).[2]  The plaintiff also brought a complaint under the Pennsylvania Human Relations Act for a hostile work environment, disability discrimination and retaliation.  (Id. at ¶ 68).  The seventh count of the complaint alleges violations of the Family Medical Leave Act (FMLA) against Defendants

---

[1]Plaintiff raises two conspiracy claims that make essentially the same allegations of a plan, scheme or design by the defendants to deprive him of his constitutional rights and in retaliation for his filing complaints under federal and state law.  Only the first count cites to federal law, 42 U.S.C. ¶ 1985.  We will assume that the second count attempts to allege a state law conspiracy claim.

[2]This retaliation claim under the ADA is made in two separate counts of the complaint, Count III and Count IV.  We assume that plaintiff's attorney simply made an oversight in drafting.

Fischi, Hyder and Morris.  (Id. at ¶ 72).  The final count of the complaint raises a claim of intentional infliction of emotional distress against all of the defendants.  (Id. at ¶ 73).

On March 17 and May 8, 2006 defendants filed motions to dismiss plaintiff's complaint on behalf of the various defendants. (See Doc. 28).  After a full briefing of the issues raised in defendants' motions, Magistrate Judge J. Andrew Smyser on August 8, 2006 issued a report and recommendation that proposed we dismiss portions of the plaintiff's complaint and then remand the case for further proceedings.  (See Doc. 47).  Magistrate Judge Smyseer proposed that we dismiss plaintiff's Fifth Amendment, procedural due process and substantive due process complaints in Count I of the amended complaint.  (Id. at 53).  He also proposed that plaintiff's conspiracy complaint under 42 U.S.C. ¶ 1985(3), stated in Count II of the Amended Complaint, be dismissed.  (Id.).  The Magistrate Judge also found that plaintiff's requests for punitive damages in Counts III and IV should be dismissed, as well as the claim for intentional infliction of emotional distress in Count X.  (Id.).  The motions to dismiss all other claims in the complaint should, Magistrate Judge Smyser found, be denied.  (Id.).  Plaintiff thereafter filed objections to the report and recommendation.  Having now been fully briefed, those objections are ripe for disposition.

**Jurisdiction**

As this case is brought pursuant to the Americans with Disabilities Act (ADA),

6

42 U.S.C. ¶¶ 12101, *et seq.*, 42 U.S.C. ¶¶ 1983 and 1985 and the Family Medical

Leave Act (FMLA), 29 U.S.C. ¶¶ 2601, *et seq.*, we have jurisdiction under 28 U.S.C.

§ 1331 ("The district courts shall have original jurisdiction of all civil actions arising

under the Constitution, laws, or treaties of the United States.").  We have

supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. §

1367.

**Legal Standard**

In disposing of objections to a magistrate judge's report and recommendation,

the district court must make a *de novo* determination of those portions of the report

to which objections are made.  28 U.S.C. § 636 (b)(1)(C); see also Henderson v.

Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  This court may accept, reject, or modify,

in whole or in part, the findings or recommendations made by the magistrate judge.

The district court judge may also receive further evidence or recommit the matter to

the magistrate judge with instructions. Id.

For those portions of the report and recommendation to which no objections

have been filed, we must determine whether a review of the record evidences plain

error or manifest injustice. See, e.g., Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir.

1983); Fed. R. Civ. P. 72(b) 1983 Advisory Committee Notes ("When no timely

objection is filed, the court need only satisfy itself that there is no clear error on the

face of the record to accept the recommendation"); 28 U.S.C. § 636(b)(1).

The Magistrate Judge issued his report and recommendation in response

to defendants' motions to dismiss the complaint for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12 (b)(6). When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested.  The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

**Discussion**

As the Magistrate Judge's decision addressed a number of different grounds for defendants' motions to dismiss, we will address each of Magistrate Judge Smyser's recommendations in turn, applying the appropriate legal standard.

**A. Plaintiff's Claims Under 42 U.S.C. § 1983 for Violations of the First, Fifth and Fourteenth Amendments**

**i.  Allegations that Plaintiffs Acted Under Color of State Law**

The magistrate judge found that plaintiff had sufficiently alleged that the defendants acted under color of state law to state a claim under 42 U.S.C. § 1983. Neither side objects to this recommendation.  We find neither clear error of law nor manifest injustice in this holding and will adopt the report and recommendation on this point.

8

### ii.  Plaintiff's Claims Under the First Amendment

The magistrate judge concluded that plaintiff had stated a claim that defendants violated his First Amendment rights by terminating his employment in retaliation for his speaking about a matter of public concern, his contention that he had been subjected to harassment and discrimination at work.  Neither side objected to this recommendation.  As we find no clear error or manifest injustice in this holding, we will adopt Magistrate Judge Smyser's recommendation on this point as well.

### iii.  Plaintiff's Fifth Amendment Claims

The parties have apparently agreed to dismiss plaintiff's claims under the Fifth Amendment, and Magistrate Judge Smyser recommended that we do so.  Neither side objects.  We find no clear error or manifest justice in that recommendation, and will adopt it.

### iv.  Plaintiff's Fourteenth Amendment Claims

### a.  Procedural Due Process

The magistrate judge found that plaintiff had a property interest in his job at the LCCF, but that the procedures provided by the collective bargaining agreement to which plaintiff's union was a party–which included a grievance and arbitration process and gave plaintiff access to the Pennsylvania court of common pleas to seek binding arbitration–provided all of the process that plaintiff was due.  The plaintiff does not object to this recommendation, and as we find neither clear error

9

nor manifest injustice, we will adopt it.

### b.  Substantive Due Process

The magistrate judge found that plaintiff failed to state a claim for a violation of his substantive due process rights under the Fourteenth Amendment.  The court concluded that a substantive due process analysis required a determination of whether plaintiff had a property interest in his job under federal law, not under state law as the procedural due process finding dictated.  The magistrate judge found that public employment is not a right protected by substantive due process, and recommended that we grant defendants' motion to dismiss on this claim.  The plaintiff does not object.  We find no clear error or manifest injustice, and will adopt the recommendation to dismiss this count.

### v.  Plaintiff's Fourth and Sixth Amendment Claims

Magistrate Judge Smyser found that plaintiff had not stated a Sixth Amendment Claim because he did not mention the Sixth Amendment in any of the counts of his amended complaint.  In his brief, plaintiff indicated he did not intend to pursue a Sixth Amendment claim.  Since we find no clear error or manifest injustice in the magistrate judge's conclusion that plaintiff has abandoned his Sixth Amendment claim, we will adopt the report and recommendation on this point.

The magistrate judge also found that plaintiff had not stated a Fourth Amendment claim because he did not mention the Fourth Amendment in Count I of his amended complaint, which stated his constitutional claims.  Plaintiff objects to

10

this recommendation, contending that in the introduction to the complaint he stated

that he sought damages for discrimination and retaliation for violations of his First,

Fourth, Fifth, Sixth and Fourteenth Amendment rights.  (Plaintiff's Brief in Support of

His Objections to the Magistrate Judge's Report and Recommendations (Doc. 49)

(hereinafter "Plaintiff's Brief") at 3).  His failure to reference the Fourth Amendment in

Count I of the amended complaint was mere oversight, and the complaint made the

defendants aware of the plaintiff's claims.

   While we find the that the plaintiff's complaint falls far short of the standard for

ideal legal drafting, we agree that the complaint provides fair notice to the defendant

of plaintiff's allegation that the breathalyzer tests administered to him violated his

Fourth Amendment rights.  Federal Rule of Civil Procedure 8(a)(2) requires only that

the complaint provide "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Even a poorly drafted complaint

does not justify dismissal, as long as the complaint provides the defendant with

notice of the claims against him, because "[t]he Federal Rules reject the approach

that pleading is a game of skill in which one misstep by counsel may be decisive to

the outcome and accept the principle that the purpose of pleading is to facilitate a

proper decision on the merits."  Conley v. Gibson, 355 U.S. 41, 48 (1957).  Plaintiff's

complaint made defendants aware of his contention that the breathalyzer testing

violated his constitutional rights.  While we urge plaintiff's counsel to be more careful

in his drafting, defendants were aware that plaintiff alleged a Fourth Amendment

11

violation based on breathalyzer testing and had an opportunity to respond to the complaint.  We find, therefore, that plaintiff did attempt to allege a Fourth Amendment violation in his complaint.

We must determine whether the facts the plaintiff alleges, if proven, would entitle the plaintiff to relief.  The plaintiff alleges that defendants tested the plaintiff six to eight times on a breathalyzer machine they knew to be inaccurate, and had no written policy on alcohol consumption or breathalyzer use.  As a result of this "positive" test, plaintiff was forced to enter into an alcohol rehabilitation program and his movement thus impeded.  These facts, plaintiff alleges, would lead a jury to conclude that he was the victim of an unreasonable search and seizure, in violation of his Fourth Amendment rights.

We disagree.  While the Fourth Amendment generally prohibits warrantless searches, the Supreme Court has recognized certain circumstances where that rule does not apply.[3]  Such "circumstances typically involve administrative searches of 'closely regulated' business, other so-called 'special needs' cases, and suspicionless 'checkpoint' searches."  United States v. Hartwell, 436 F.3d 174, 178 (3d Cir. 2006).  Requiring a prison guard to submit to a breathalyzer is such an administrative search that does not automatically implicate Fourth Amendment concerns: "[t]he Government's interest in regulating the conduct of railroad employees to ensure

---

[3]Because we can dispose of plaintiff's Fourth Amendment claims on other grounds, we will assume that plaintiff could bring a claim against the prison as a government agency for violating his rights under that amendment.

safety, like its supervision of probationers or regulated industries, or its operation of

a government office, school, or prison 'likewise presents 'special needs' beyond

normal law enforcement that may justify departures from the usual warrant and

probable-cause requirements.'" Skinner v. Railway Labor Executives' Ass'n, 489

U.S. 602, 620 (1989).  A breathalyzer test, by its nature, does not implicate serious

privacy concerns because "breath tests reveal the level of alcohol in the employee's

bloodstream and nothing more . . . [and] breath tests reveal no other facts in which

the employee circumstances, we cannot conclude that the administration of a breath

test implicates significant privacy concerns." Id. at 625-26.

Plaintiff apparently contends that the way that the breathalyzer test was

applied here–repeatedly, and with a machine known to be unreliable–constituted a

violation of his rights.  He cites no law to support this proposition.[4]  Since courts have

---

[4]Plaintiff cites to United States v. Place, 462 U.S. 696, 703 (1983) to argue that courts must "balance the nature and quality of the intrusion on the individuals [sic] Fourth Amendment interests against the importance of the government interest alleged to justify the intrusion." (Plaintiff's Brief at 4).  We find this case inapposite.  The question addressed in Place–a criminal case–was whether a search could be made absent probable cause and not violate the Fourth Amendment.  The court concluded that "[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.  When the nature and extent of the detention are minimally intrusive of the individual's Fourth Amendment interests, the opposing law enforcement interests can support a seizure based on less than probable cause." Place, 462 U.S. at 703.  Plaintiff makes no allegations that the prison lacked probable cause for its search, but only that the machine did not work properly and that others who were obviously intoxicated did not receive the same treatment.  (See Plaintiff's Brief at 4).  In any case, as stated above, the Supreme Court and the Third Circuit Court of Appeals have found that the type of administrative search here does not require a warrant.  See Hartwell, 436 F.3d at 178, and the cases cited therein.

held that breathalyzer searches of prison guards are administrative searches that do not require a warrant, we find that plaintiff has not stated a Fourth Amendment claim upon which relief can be granted based on his breathalyzer test.

Without citing any cases, plaintiff also alleges that his freedom of movement was inhibited by his employer's response to the positive breathalyzer test.  Because he entered alcohol rehabilitation at the threat of losing his job, plaintiff claims, defendants violated his Fourth Amendment rights.  The Supreme Court has noted that "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control.  A seizure occurs when an unintended person or thing is the object of the detention or taking [citations omitted], but the detention or taking itself must be willful."  Bromer v. County of Inyo, 489 U.S. 593, 595-96 (1989).   Plaintiff claims he entered alcohol rehabilitation treatment, but not that he did so while in custody of the defendants, or that he lacked freedom to leave that confinement if he so chose.  Indeed, plaintiff admits that he entered rehabilitation of his own will.  Defendants thus did not acquire physical control over him, and plaintiff has not stated a Fourth Amendment claim on those grounds.  See Berg v. Allegheny, 219 F.3d 261, 269 (3d Cir. 2000) (holding that "[a] person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement.").  We will adopt the Magistrate Judge's recommendation to dismiss plaintiff's Fourth Amendment claim.

**B.  Plaintiff's Claims Under 42 U.S.C. § 1985(3)**

14

Plaintiff alleges a conspiracy among all defendants to deprive of him of statutory and constitutional rights.  The Magistrate Judge recommended dismissal of this conspiracy claim because he concluded that plaintiff's general claim that he was "disabled" did not qualify him as a member of a protected class under Section 1985(3).  Without describing a specific disability, plaintiff could not claim to be a member of a class protected by federal civil rights law.  The Magistrate Judge concluded that without a more narrow definition of the class to which plaintiff belonged, the court would be concluding that all persons who claimed a disability would be included in § 1985(3).  This would make the protected class too broad and would require no analysis of the specific facts that led to the discrimination claim. Plaintiff objects to this recommendation, contending that he claimed a disability due to a back injury, and that his employer's perception that he was an alcoholic also placed him within a protected class and qualified him for protection under the law.

42 U.S.C. § 1985(3) forbids "two or more persons" from "conspir[ing] . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws."  The Supreme Court has determined that this section requires "that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).  In order to state a claim under § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) motivated by a racial and class based discriminatory animus designed to deprive, directly or indirectly, any person or class

15

of persons to the equal protection of the laws; (3) an act in furtherance of the

conspiracy; and (4) an injury to the person or property or the deprivation of any right

or privilege of a citizen of the United States." Lake v. Arnold, 112 F.3d 682, 685 (3d

Cir. 1997).  The question here is whether plaintiff, by contending he suffers from a

disability due to his back condition and the perception that he is an alcoholic, has

alleged that he is a member of a protected class.  To succeed on that claim, "a

plaintiff must allege both that the conspiracy was motivated by discriminatory animus

against an identifiable class and that the discrimination against the identifiable class

was invidious." Farber v. City of Patterson, 440 F.3d 131, 135 (3d Cir. 2006).

In Lake v. Arnold, the United States Court of Appeals for the Third Circuit

found that "[discrimination based on handicap, including mental handicap, like that

based on gender, often rests on immutable characteristics which have no

relationship to ability.  Where this is the case, we are convinced that the

discrimination is invidious and that the reach of section 1985(3) is sufficiently elastic

that the scope of its protection may be extended." Lake, 112 F.3d at 687.  In Lake,

the court noted the long history of discrimination faced by people with disabilities,

particularly those with mental disabilities, and found that Section 1985(3)'s

protections against "class based invidiously discriminatory motivation[s]" could be

extended to include such claimants. Id. at 688.  As a general matter, "some groups,

particularly those deemed to be distinguishable from others by immutable

characteristics, such as African-Americans, women and the mentally retarded, are

16

so clearly accepted as objectively identifiable" that their status as a protected class is

obvious.  Farber, 440 F.3d at 137; see also, Friends & Residents of St. Thomas

Twp., Inc. v. St Thomas Twp., 176 Fed. Appx. 219, 229 (3d Cir. 2006) (noting that

"[t]he Third Circuit in Lake Further limited § 1985(3) claims to 'invidious

discrimination' predication on discrimination against individuals with 'immutable

characteristics' such as race, gender or mental handicap.").

        In his Amended Complaint, plaintiff alleges that he had undergone surgery to

his back, causing "significant limitations upon his major life activities and causing him

to be disabled."  (Amended Complaint at ¶ 21).  This allegation states a claim that

plaintiff suffers from a disability as defined by the Americans with Disabilities Act.

See 42 U.S.C. § 12102(2)(A-C) (defining "disability" as (A) a physical or mental

impairment that substantially limits one or more of the major life activities of such

individual; (B) a record of such an impairment; or (C) being regarded as having such

an impairment.").[5]  Because the plaintiff alleges he suffers from a specific disability,

---

[5]Plaintiff also contends that the alleged conspiracy to discriminate against him was
motivated in part because defendants perceived he was an alcoholic.  (See Plaintiff's Brief
in Support of the Objections and Exceptions to the Report and Recommendation of
Magistrate Judge Smyser (Doc. 49) (hereinafter "Plaintiff's Brief") at 6) (contending that
"The Conspiracy Claim clearly establishes that he belonged to not just to one (1) protected
disability class, but two (2), his first for his back injury and the second for alcoholism.").  We
fail to see how either of the plaintiff's conspiracy claims specifically assert that defendant's
conspiracy was motivated by plaintiff's perceived alcoholism.  Instead, he simply pled a
general claim of discrimination based on an unnamed disability.  (See Amended Complaint
at ¶¶ 59, 69) (contending that "[t]he Defendants . . . conspired against the Plaintiff to
dismiss him because of his disability and non-work related handicap and in retaliation" and
claiming Defendants conspired against him to violate his rights under the "First, Fifth and
Fourteenth Amendments . . . [and] the Americans' [sic] with Disabilities Act.").

we disagree that plaintiff has not alleged that he is a member of a protected class.  If plaintiff could actually prove that his back problem significantly limited a major life activity and thus qualified as a disability, he could show that he is part of a group of people with an immutable characteristic that is often the subject of invidious discrimination.  Accepting plaintiff's claim of a disability due to a back injury as true, we must conclude that plaintiff could be a member of a protected class.

At the same time, however, we agree with the Magistrate Judge that plaintiff has not stated a claim under § 1985(3).  In order to state a claim, the plaintiff must allege not only that he is a member of a protected class, but that the conspiracy was "motivated by a discriminatory animus against an identifiable class."  Farber, 440 F.3d at 135.  Plaintiff's claim is not that the conspiracy was motivated by a desire to prevent people with disabilities due to back problems from working as prison guards, but out of a desire to prevent him from working due to his disability.  Accordingly, plaintiff does not allege a "discriminatory animus against an identifiable class," but a discriminatory attitude against him.  See Farber, 440 F.3d at 136 (holding that there are "two requirements for a § 1985(3) claim: "that the conspirators be motivated by class-based invidiously discriminatory animus and that the plaintiff be the victim of an injury he or she seeks to remedy by means of § 1985(3).  If merely alleging the latter could satisfy the former, 'the requirement of class-based animus would be drained of all meaningful content, [citations omitted], and would transform § 1985(3) into the 'general federal tort law' Congress did not intend to enact.").  We therefore

18

will adopt the Magistrate's Judge's recommendation and dismiss the plaintiff's claim under 42 U.S.C. § 1985(3).

**C.  Plaintiff's Claims under the Americans with Disabilities Act**

The magistrate judge recommends that we deny defendants' motion to dismiss plaintiff's claims under the Americans with Disabilities Act.  Neither party filed objections to this recommendation.  As we find neither clear error nor manifest injustice, we will adopt it.

The magistrate judge also recommends that plaintiff's claim of punitive damages under the ADA be denied.  Such damages are not available under the statute.  No objections to that recommendation have been filed.  Because we find neither clear error nor manifest injustice in that determination, we will adopt the recommendation on that point and dismiss punitive damages from this count.

**D.  Plaintiff's Retaliation Claim Under the Americans with Disabilities Act**

The magistrate judge recommends that we deny the motion to dismiss on this point, and neither side objects.  We find no clear error or manifest injustice in this recommendation, and we will adopt it.  We will for the same reasons adopt Magistrate Judge Smyser's recommendation that we grant defendants' motion to dismiss plaintiff's claim for punitive damages for retaliation under the ADA.

**C.  Plaintiff's Claims under the Pennsylvania Human Relations Act**

Magistrate Judge Smyser recommends that we deny defendants' motions to dismiss plaintiff's claims under the Pennsylvania Human Relations Act (PHRA).  He

reasons that the same pleading standards that apply to federal law under the ADA apply to the PHRA.  Since defendants' motions to dismiss plaintiff's federal claims under the ADA have been denied, they should be denied under the PHRA as well. Neither side filed objections to this recommendation, and because we find neither clear error or manifest injustice, we will adopt it.

### D.  Plaintiff's State Law Conspiracy Claim

The magistrate judge recommended that we deny defendants' motion to dismiss this claim because plaintiff sufficiently pled the elements of conspiracy under Pennsylvania law.  Neither side objected.  Since we find neither clear error or manifest injustice, we will adopt this recommendation as well.

### E.  Family and Medical Leave Act Claims

Magistrate Judge Smyser recommends that we deny defendants' motions to dismiss plaintiff's claims under the Family and Medical Leave Act.  Neither side objects.  We find neither clear error nor manifest injustice, and will adopt the recommendation.

### F.  Intentional Infliction of Emotional Distress

The magistrate judge recommended that we grant defendants' motions to dismiss plaintiff's claims for intentional infliction of emotion distress.  He concluded that plaintiff had not alleged any facts which would constitute extreme and outrageous conduct if proved and thus determined that plaintiff had not stated a claim for intentional infliction of emotional distress upon which relief could be

granted.  Plaintiff objects, arguing that his amended complaint alleged that

defendants had acted "intentionally, negligently and with malicious of forethought

[sic] and in such an outrageous manner as to be in a front [sic] of the consciousness

of reasonable men."  (Plaintiff's Brief at 6).  This claim, plaintiff asserts, "obviously

places the Defendants on notice of what they must answer" and thus meets the

requirements of the Federal pleading rules.

　　　We will adopt the report and recommendation on this point.  Under

Pennsylvania law for a claim of intentional infliction of emotional distress:  "(1) the

conduct [of the defendant] must be extreme and outrageous; (2) it must be

intentional or reckless; (3) it must cause emotional distress; (4) that distress must be

severe."  Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. 1997).  Courts "[allow]

recovery only in very egregious cases."  Id.  At the pleading stage, the court is "to

decide as an initial matter whether the conduct at issue can reasonably be regarded

as sufficiently extreme to constitute 'outrageousness' as a matter of law." Smith v.

Sch. Dist. of Philadelphia, 112 F. Supp. 2d 417, 427 (E.D. Pa. 2000).  As a matter of

law, outrageousness occurs only when "'the case is one in which the recitation of the

facts to an average member of the community would arouse his resentment against

the actor, and lead him to exclaim, 'outrageous.'" Id. at 428 (quoting Hunger v.

Grand Central Sanitation, 670 A.2d 173 (Pa. Super. 1996)).  Courts have limited

outrageous conduct to that which is "'atrocious' and 'utterly intolerable in a civilized

community.'" Id. (quoting Banyas v. Lower Bucks Hosp., 437 A.2d 1236 (1981)).

Plaintiff here does not allege any conduct which a jury would find to be "atrocious" or so "intolerable" that any a person in a civilized community would instantly condemn it.  Instead, plaintiff merely characterizes defendants' conduct as such that would be "an affront" to reasonable men.  Plaintiff's complaint simply describes the elements of the tort of intentional infliction of emotion distress, but does not allege any facts that, if proved true, would lead a jury to find that defendants' conduct was so outrageous as to justify such a finding.  Plaintiff contends that his employer discriminated against him because of his disability and his perceived alcoholism, manipulated a breathalyzer analysis in order to get him fired, and conspired to discharge him without proper grounds.  None of these allegations would cause a reasonable juror to become outraged and conclude that community standards had been flaunted flaunted.  <u>See, e.g.</u>, <u>Smith</u>, 112 F.Supp.2d 428-29 (finding insufficient for a finding of intentional infliction of emotional distress allegations that the defendants leaked information to the press that painted the plaintiff as an anti-semite and put pressure on a parent-teacher association to remove him from his post as president of the organization).  Because the plaintiff has not alleged any conduct that would constitute intentional infliction of emotional distress, we will adopt the report and recommendation on this point.

## G.  Wrongful Discharge

Finally, the magistrate judge recommended that we deny defendants' motions to dismiss plaintiff's wrongful discharge count.  Neither party filed objections.

22

Because we find no clear error or manifest injustice in the Magistrate Judge's

conclusion, we will adopt this recommendation.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RONALD A. MAJEWSKI,** | : | **No. 3:05cv2396** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | **(Magistrate Judge Smyser)** |
| | : | |
| **LUZERNE COUNTY, LUZERNE** | : | |
| **COUNTY CORRECTIONAL FACILITY,** | : | |
| **GENE FISCHI, SAMUEL HYDER,** | : | |
| **JOSEPH MORRIS, TONY SEIWELL,** | : | |
| **ROWLAND ROBERTS,** | : | |
| **INTERNATIONAL LABORER'S** | : | |
| **UNION OF NORTH AMERICA LOCAL** | : | |
| **1300, GREGORY SKREPENAK,** | : | |
| **TODD VONDERHEID, STEVE URBAN,** | : | |
| **WISTER YUHAS, and** | : | |
| **ROBERT PAYNE,** | : | |
| **Defendant s** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

**AND NOW**, to wit, this 5th day of April 2007, the Report and

Recommendation of Magistrate Judge J. Andrew Smyser is hereby adopted as

follows:

1) The defendants' motion to dismiss plaintiff's First Amendment claim is

hereby **denied**;

2) The plaintiff's claim under the Fifth Amendment is hereby **dismissed**;

3) The plaintiff's Fourteenth Amendment procedural and substantive due

process claims are hereby **dismissed**;

4)The plaintiff's Sixth Amendment claim is hereby **dismissed**;

5) The plaintiff's Fourth Amendment claim is hereby **dismissed**;

6) The plaintiff's claim under 42 U.S.C. § 1985(3) is hereby **dismissed**;

7) The defendants' motion to dismiss plaintiff's claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, is hereby **denied**, but the plaintiff's claim for punitive damages under the Americans with Disabilities Act is hereby **dismissed**;

8) The defendants' motion to dismiss plaintiff's retaliation claim under the Americans with Disabilities Act is hereby **denied**, but the defendants' motion to dismiss plaintiff's claim for punitive damages for retaliation under the ADA is hereby **granted**;

9) The defendants' motion to dismiss plaintiff's claims under the Pennsylvania Human Relations Act, 43 P.S. §§ 955(a), *et seq.*, is hereby **denied**;

10) The defendants' motion to dismiss plaintiff's state-law conspiracy claim is hereby **denied**;

11) The defendants' motion to dismiss plaintiff's claims under the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.*, is hereby **denied**;

12) The plaintiff's claim for Intentional Infliction of Emotional Distress is hereby **dismissed**; and

13) The defendants' motion to dismiss plaintiff's wrongful discharge complaint

is hereby **denied**.

14)  The case is remanded to Magistrate Judge J. Andrew Smyser for

proceedings consistent with this opinion.


**BY THE COURT:**


s/ James M. Munley
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**