# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD A. MAJEWSKI,** | : | **No. 3:05cv2396** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **LUZERNE COUNTY,** | : | |
| **LUZERNE COUNTY CORRECTIONAL** | : | |
| **FACILITY,** | : | |
| **GENE FISCHI,** | : | |
| **SAMUEL HYDER,** | : | |
| **ROWLAND ROBERTS,** | : | |
| **TONY SEIWELL,** | : | |
| **INTERNATIONAL LABORER'S** | : | |
| **UNION OF NORTH AMERICA LOCAL** | : | |
| **1300,** | : | |
| **GREGORY SKREPENAK,** | : | |
| **TODD VONDERHEID,** | : | |
| **STEVE URBAN,** | : | |
| **WEBSTER YUHAS, and** | : | |
| **ROBERT PAYNE,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court are defendants' objections (Docs. 87, 90) to the report and

recommendation (Doc. 86) of Magistrate Judge J. Andrew Smyser, which proposes

that we grant in part and deny in part the defendants' motions for summary

judgment.  Having been fully briefed, the matters are ripe for disposition.

**Background**

This case grows out of plaintiff's employment at the Luzerne County

Correctional Facility (LCCF), where he worked as a guard.  Plaintiff began his

employment at the LCCF in 1991.  (Defendants Luzerne County, Luzerne County

Correctional Facility, Gene Fischi, Samuel Hyder, Joseph Morris, Rowland Roberts,

Gregory Skrepenak, Todd Vonderheid, Steven Urban, Robert Payne and Wister

Yuhas's ("County Defendants") Statement of Material Facts as to Which no Genuine

Issue Remains to Be Tried (Doc. 71) (hereinafter "County Defendants' Statement) at

¶ 4).[1]  Plaintiff sustained a work-related injury in early March 1994.  (Id. at ¶ 5).

While restraining an inmate, plaintiff herniated a disk in his back.  (Defendants

International Laborers' Union of North America Local 1300 and Tony Seiwell's

("Union Defendants") Statement of Undisputed Material Facts (Doc. 67) (hereinafter

"Union Defendant's Statement") at ¶ 2).  He finally returned to work on October 10,

2000.  (County Defendant's Statement at ¶ 6).  Plaintiff served in a permanent light

duty job as a control booth guard from that date.  (Id.).  In April 2003, plaintiff filed a

complaint with the Equal Employment Opportunity Commission that alleged that the

defendant prison had retaliated against him because he sought accommodations for

his injury pursuant to the Americans with Disabilities Act (ADA).  (Id. at ¶ 7).[2]

---

[1]All the parties filed statements of fact.  The court will cite to the defendants' statements where the facts are undisputed.  The court will explain where the facts are disputed.

[2]The complaint in question was marked by the notary as being filed on April 17, 2002.  (See Exh. 5 to County Defendants' Statement).  The plaintiff listed the date as April 17, 2003 when he signed the document, however.  In addition, the events narrated in the complaint largely occurred after 2003.  The court will therefore accept April 17, 2003 as the date plaintiff filed the complaint.

In the late evening and early morning of December 6 and 7, 2004, plaintiff arrived for work at the LCCF and was asked to take a breathalyzer test.  (Id. at ¶ 8). Around 2:30 a.m. on December 7, plaintiff was called to his captain's office and ordered to take the exam.  (Plaintiff's Deposition (Exh. 2 to County Defendants' Statement) (hereinafter "Defendant's Dep.") at 31).  Plaintiff admits that he drank four or five beers and ate a cheeseburger on the night in question, but insists that he slept for seven hours after eating and drinking and was not under the influence of alcohol when he arrived at work.  (Plaintiff's Response to Union Defendants' Statement (hereinafter "Plaintiff's Response to Union") (Doc. 82-4) at ¶ 6).  Plaintiff blew into the device two or three times for the nurse administering the exam.  (Id.). After the device provided no reading, another prison official, Lieutenant Semon, grabbed the breathalyzer from the nurse and ordered the plaintiff to blow into it four or five more times.  (Id.).  Finally, Semon got a reading from the machine.  (Id.).  The captain immediately informed plaintiff that he had been relieved of his duties.  (Id.). Plaintiff alleges that the device had never before been used to check a guard or other prison employee.  (Id. at 32).  The prison used it only to test inmates on work release.  (Id.).  Plaintiff contends that he never saw such a test administered on another employee and never saw anyone sent home because they were under the influence of alcohol.  (Id. at 32-33).

Later that morning, Deputy Warden Samuel Hyder informed plaintiff that he had been suspended without pay pending possible termination at the next Prison

Board meeting.  (County Defendants' Statement at ¶ 9).  This suspension came because plaintiff had allegedly violated prison rules.  (Union Defendants' Statement at ¶ 7).  The LCCF Code of Ethics classifies "reporting for duty under the influence of intoxicating beverages or narcotics on facility property" as a first level offense.  (Id. at ¶ 10).  The penalty for such offenses is dismissal.  (Id.).  Plaintiff contends that the policy was applied inconsistently.  (Plaintiff's Response to County Defendants' Statement (Doc. 82-3) (hereinafter "Plaintiff's Response to County") at ¶ 10).  Several other guards had been disciplined for arriving at work under the influence of alcohol, and had received much more favorable treatment than the plaintiff did.  (Id.).  None of these other workers had returned from work after suffering an injury and been assigned light duty, as plaintiff was.  (Id.).

Plaintiff entered an alcohol rehabilitation program on December 13, 2004.  (County Defendants' Statement at ¶ 11).  Plaintiff contends that he did so only because he feared for his job.  (Plaintiff's Response to County at ¶ 11).  On January 5, 2005, plaintiff requested medical leave.  (Plaintiff's Response to County at ¶ 12).  Plaintiff testified at his deposition that he felt that prison officials perceived him as an alcoholic because "[t]hey assumed I was drinking when I was on duty."  (Plaintiff's Dep. at 84).  Before December 7, 2004, no one at the prison had ever "mentioned" that plaintiff was an alcoholic, and plaintiff never felt that anyone perceived him as suffering from that condition.  (Id. at 85).  After his stint at the rehabilitation clinic, however, prisoner officials and employees "naturally assumed that [he] was."  (Id.).

4

The prison placed plaintiff on leave retroactive to December 7, 2004. (Plaintiff's Response to County at ¶ 12).  Plaintiff contends that he did not ask his leave to be made retroactive, nor was he credited for time he had accrued under the Family and Medical Leave Act.  (Id.).  The defendants terminated plaintiff's benefits ninety days after December 7, 2004.  (Id.).

The County Defendants offered plaintiff a "last-chance agreement" which would have allowed him an opportunity to return to work at the LCCF.  (County Defendants' Statement at ¶ 13).  The Union Defendants assisted plaintiff in his attempt to negotiate more favorable terms for this agreement.  (Union Defendants' Statement at ¶ 14).  Defendant Tony Seiwell participated in this process.  (Id.).  The parties disagree about the extent of the changes plaintiff obtained during this negotiation. Plaintiff agrees, however, that he objected to provisions in the proposed agreement that required him to participate in follow-up care, mandated termination if he violated the agreement, and forfeited his ability to grieve the incident.  (Id. at ¶ 15).  Plaintiff also contends that he expressed concern about privacy reports. (Plaintiff's Response to Union's Statement at ¶ 15).   Plaintiff refused to sign an agreement, though he contends that he still intended to negotiate such an agreement when the prison board fired him.  (Id.).  On September 19, 2005, the prison board terminated the plaintiff.  (County's Statement at ¶ 14).

Plaintiff filed a complaint, a motion to proceed *in forma pauperis* and a motion for appointed counsel (Docs. 1-3) in this court on November 18, 2005.  The

magistrate judge gave the complaint an initial screening.  On December 7, 2005 he

recommended that the court dismiss the complaint without prejudice.  (Doc. 4).  The

plaintiff then obtained counsel and the court granted him leave to file an amended

complaint.  (Doc. 8).  The plaintiff filed his amended complaint on January 10, 2006.

Count I of that complaint, brought against all the individual defendants pursuant to

42 U.S.C. § 1983, alleges a violation of plaintiff's rights under the First, Fifth and

Fourteenth Amendments to the United States Constitution.  Count II, brought

pursuant to 42 U.S.C. § 1985, alleges that the individual defendants conspired

against plaintiff in retaliation of claims he brought before the EEOC and under the

Pennsylvania Human Relations Act (PHRA), 43 P.S. §§ 955(a) *et seq*.  Count III

alleges violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101

*et seq*.  Count IV alleges retaliation under the ADA.  Count V brings discrimination

and retaliation claims under the PHRA.  Count VI claims a conspiracy to violate

plaintiff's rights under Pennsylvania law.  Count VII contends that defendants Fischi,

Hyder and Morris violated plaintiff's rights under the Family and Medical Leave Act

(FMLA), 29 U.S.C. §§ 2601 *et seq*.  Count VII alleges that all defendants engaged in

intentional infliction of emotional distress.  Count IX claims wrongful discharge

against the County, the LCCF and the Union.

        Defendants filed motions to dismiss the amended complaint.  The magistrate

judge recommended that the court grant those motions in part and deny them in

part.  (Doc. 47).  He recommended that the court dismiss plaintiff's Fifth Amendment

substantive and procedural due process, 42 U.S.C. § 1985(3), punitive damages and intentional infliction of emotional distress claims.  The court adopted this report and recommendation and remanded the case to Magistrate Judge Smyser so that the parties could conduct discovery.  (Doc. 57).  The defendants filed motions for summary judgment (Docs. 66, 70) at the close of discovery, and the magistrate judge issued a report and recommendation (Doc. 86).

This report and recommendation, issued on January 22, 2008, proposes that the court grant in part and deny in part defendants' motions for summary judgment. The magistrate judge recommended that Defendant Seiwell be granted summary judgment on plaintiff's First Amendment and conspiracy claims.  The magistrate judge also recommended that the Defendant Union be granted summary judgment on plaintiff's First Amendment, ADA, PHRA and wrongful discharge claims.  On the county defendants' motion, the magistrate judge recommended that the court grant Defendants Fischi, Hyder and Morris summary judgment on plaintiff's FMLA claims. The magistrate judge concluded, however that the court should deny summary judgment to the county defendants on all of plaintiff's other claims.  The parties appear to interpret this recommendation as concluding that an equal protection claim against all of the parties should remain before the court.

Both sets of defendants filed objections to the report and recommendation.[3]

---

[3]Plaintiff did not file objections to the portion of the report that recommended that summary judgment should be granted to the defendants.  Therefore, in order to decide whether to adopt the report and recommendation, we must determine whether a review of

The parties then briefed the issues, bringing the case to its present posture.

**Jurisdiction**

Because this case is brought pursuant to the 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.,* and the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.*, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The court has supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. §. 1367(a).  ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Legal Standard**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made.  28 U.S.C. § 636 (b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  This court may accept, reject, or modify,

---

the record evidences plain error or manifest injustice.  See, e.g., Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983); Fed. R. Civ. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); 28 U.S.C. § 636(b)(1). After careful consideration, the court finds no plain error or manifest injustice in the report and recommendation on those points, and will adopt it.

in whole or in part, the findings or recommendations made by the magistrate judge. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

Before the court is the Magistrate Judge's recommendation that we grant Defendants' motion for summary judgment.  Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law. Id.  Where the non-moving party will bear the burden of

9

proof at trial, the party moving for summary judgment may meet its burden by

showing that the evidentiary materials of record, if reduced to admissible evidence,

would be insufficient to carry the non-movant's burden of proof at trial. Celotex v.

Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the

burden shifts to the nonmoving party, who must go beyond its pleadings, and

designate specific facts by the use of affidavits, depositions, admissions, or answers

to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Both the union and the county defendants raise objections to the report and

recommendation.  The court will address each in turn.

**A.  Luzerne County Defendants**

The Luzerne County Defendants raise three objections to the report and

recommendation.  The court will address each in turn.

**i.  First Amendment Claims**

Defendants contend that they should be granted summary judgment on

plaintiff's first amendment retaliation claim.  They argue that the magistrate judge

erred in finding that plaintiff had spoken on a matter of public concern when his

attorney mailed to letters to the LCCF Warden in 2002 and 2003.  They also contend

that plaintiff never raised the 2003 letter as a matter of public concern before the

court.  The letters instead addressed personnel and employment grievances at the

prison.   As such, plaintiff has not introduced evidence by which he could maintain a

10

First Amendment claim against the County.

Plaintiff's claim here is in the nature of a First Amendment retaliation claim.  In order to make out such a case, the plaintiff must present evidence to show that he (1) engaged in a protected activity; (2) that the government took action against the plaintiff at the time of or after the protected action; (3) that the protected activity caused the government to take the action that harmed the plaintiff.  Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).  In such cases, "[t]he threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation."  Eichenlaub v. Township of Indiana, 385 F.3d 274, 282 (3d Cir. 2004).

If the plaintiff, as here, is a public employee bringing a complaint against his or her employer, the protected activity must address a "matter of public concern."  Id.  A public employee's speech addresses a matter of public concern when "it can 'be fairly considered as relating to any matter of political, social or other concern to the community.'"  Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001) (quoting Green v. Phila. Hous. Auth., 105 F.3d 882, 885-86 (3d Cir. 1997)).   A court is to "focus on the content, form, and context of the activity in question."  Id.  Such speech qualifies for protection "if it attempts 'to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.'"  Id. (quoting Holder v. City of Allentown, 987 F.2d 188, 195 (3d Cir. 1993)).  If "a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon

11

matters only of personal interest, absent the most unusual circumstances, a federal

court is not the appropriate forum in which to review the wisdom of a personnel

decision taken by a public agency allegedly in reaction to the employee's behavior."

Connick v. Myers, 461 U.S. 138, 147 (1983).

Defendants argue that the magistrate judge erroneously found that two letters

attributed to the plaintiff addressed matters of public concern.  These two letters

were written by an attorney plaintiff employed at the time.  The first letter in question

was written on December 3, 2002, by plaintiff's attorney Paul M. Jennings.  (See

Exh. L. to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss (Doc. 84-

14)).  The letter complained to Warden Gene Fischi about a three-day suspension

imposed on the plaintiff by Deputy Warden Roberts.  (Id.).  It also mentioned

"harassment" about which plaintiff complained, and alleged that the defendants had

taken action against plaintiff in retaliation for those complaints and for plaintiff's

claims under the ADA.  (Id.).  The letter accused Fischi of "treating [plaintiff]

differently than at least three individuals within the past six (6) weeks who" had

committed violations similar to plaintiff's.  (Id.).  Plaintiff informed the Warden that he

was considering contacting the Equal Employment Opportunity Commission about

unfair treatment and retaliation.   The letter closed with a warning that "[w]orkplace

retaliation is a serious problem.  The Americans with Disabilities Act expressly

provides very broad prohibitions and identifies that it is unlawful for any 'person' to

retaliate."  (Id.).

The second letter, sent by Attorney Jennings to members of the Prison Board on October 21, 2003, raised similar concerns.  Jennings informed the board members that he represented plaintiff, and explained that "[s]ince June of 2002 I have employed every attempt to establish a non-discriminatory work environment for Mr. Majewski."  (Exh. Q to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss (Doc. 84-19)).  Plaintiff, Jennings reported, was disabled.  (Id.).  He had been injured at work, but managed to return to the prison and occupy a job created to accommodate his disability.  (Id.).  Jennings had attempted to negotiate with the warden and deputy warden about employment conditions, but "evidence indicates that peaceful dialog [sic] only leads to malevolent and retaliatory measures against my client."  (Id.).  "Special rules," Jennings complained, had "been applied to Mr. Majewski, due to his disability and due to the fact that he has filed [a] U.S. EEOC Complaint."  (Id.).  The warden had also retaliated against plaintiff for his "complete opposition to what he considered to be unlawful employment practices."  (Id.).  Jennings noted that the warden applied rules to plaintiff's employment punishing tardiness that he did not apply to any other guard.  (Id.).  In addition, Jennings reminded the board that "[t]o the complete shame of your organization, I have begged since June of 2002 for a copy of the current Code of Ethics.  None has been offered."  (Id.).  Further, Jennings wrote, "I have begged for a dialog [sic] toward the Reasonable Accommodations consistent with the Americans with Disabilities Act. None has been offered."  (Id.).  Jennings closed his letter with a request to resolve

13

plaintiff's "allegations" against the defendants.  (Id.).

The magistrate judge found that "[t]hese letters concerned more than just the plaintiff's treatment by his coworkers." (Report and Recommendation (Doc. 86) at 35).  Because plaintiff complained about violations of the ADA and "[r]etaliation in violation of the ADA is illegal" the letters addressing that violation "addressed a matter of public concern."  (Id.).

The court declines to adopt the report and recommendation on this point. Plaintiff did not speak on a matter of public concern.  This case is not like Feldman v. Philadelphia Housing Authority, where the plaintiff's speech concerned corruption and mismanagement in a city housing agency and the court concluded that "[d]isclosing corruption, fraud, and illegality in a government agency is a matter of significant public concern."  Feldman v. Philadelphia Housing Authority, 43 F.3d 823, 829 (3d Cir. 1994).  Here, plaintiff complained he had been unfairly suspended because he had raised concerns about his treatment under the ADA.  He did not complain about corruption within the prison, systematic discrimination against all employees on the basis of race, or any other matter which would raise a general concern about the department's operation.  Instead, he complained about a personnel matter.  Protected speech cannot be found in such circumstances. See, e.g., Connick, 461 U.S. at 147; Sanguini v. Pittsburgh Board of Public Education, 968 F.2d 393, 399 (3d Cir. 1992) (finding that speech is not a matter of public concern when it is "related solely to mundane employment grievances.").  Since "[i]t

14

is for the court, not the jury, to perform the [Supreme Court's] balancing test" on a public employee's speech, the court concludes as a matter of law that plaintiff did not speak on a matter of public concern and therefore cannot prevail on his First Amendment retaliation claim.  Feldman, 43 F.3d at 829.  Summary judgment is therefore appropriate on this claim.

### ii.  ADA Claims[4]

Defendants also contend that the magistrate judge erred in finding summary judgment inappropriate on plaintiff's ADA claim.  Plaintiff's claim here, defendants argue, is that he was perceived as being an alcoholic and was discharged because of that perception.  Defendants contend that because plaintiff could not have been employed at the LCCF if he were under the influence of alcohol, he was not a qualified person with a disability and therefore cannot prevail under the ADA.

Under the ADA, an employer cannot discriminate against a qualified individual with a disability in regard to her employment.  42 U.S.C.A. § 12112 (a). Further, an employer must make reasonable accommodations to known physical or mental limitations of an otherwise qualified employee with a disability unless such employer can demonstrate the accommodation would impose an undue hardship on the operation of the employer's business.   Id.  See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (holding that "[d]iscrimination under the ADA

---

[4]The court's analysis under the ADA applies equally to plaintiff's claims under the PHRA.  See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

15

encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities.").

The plaintiff has the initial burden in an ADA matter of establishing a *prima facie* case.  Olson v. General Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996); Newman v. GHS Osteopahtic, Inc., 60 F.3d 153, 157 (3d Cir. 1995).  A *prima facie* case is established by the plaintiff when she demonstrates: 1)she is a disabled person within the meaning of the ADA; 2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) she has suffered an otherwise adverse employment decision as a result of discrimination.  Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996);   Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998).

If the plaintiff meets this initial burden, the court then applies the next step in "the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-805." Abramson v. William Patterson College, 260 F.3d 265, 281 (3d Cir. 2001).  The burden of production shifts to the employer to "proffer a legitimate, non-discriminatory reason for the adverse employment decision."  Id. at 282.  An employer need only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Pierske, 32 F.3d 759, 763 (3d Cir. 1994).  "The employer need not prove that the tendered reason *actually* motivated its behavior, as

throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id. (emphasis in original).  Once the employer meets this burden, the plaintiff must show that a jury "could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's action." Id. at 764.

Defendant contends that plaintiff cannot meet his initial burden in this case because he cannot demonstrate that he is a qualified individual with a disability.  The ADA establishes that "[t]he term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  The statute further defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Major life activities, left undefined by the statute, have been defined by the Equal Employment Opportunity Commission as "'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing , speaking, breathing, learning, and working.'" Tice v. Centre Area Trans. Auth., 247 F.3d 506, 512 (3d Cir. 2001) (quoting 29 C.F.R. § 1630(2)(i)).

The disagreement on this matter concerns whether plaintiff was a person

17

covered under the "regarded as" provision of the ADA.  To qualify under that portion

of the statute, a plaintiff must show that he: "'(1) Has a physical or mental impairment

that does not substantially limit major life activities but is treated by the covered

entity as constituting such limitation; (2) Has a physical or mental impairment that

substantially limits major life activities only as a result of the attitudes of others

toward such impairment; or (3) Has [no such impairment] but is treated by a covered

entity as having a substantially limiting impairment.'"  Williams v. Philadelphia

Housing Authority, 380 F.3d 751, (3d Cir. 2004) (quoting Taylor v. Pathmark Stores,

Inc., 177 F.3d 180, 188 (3d Cir. 1999)).  Plaintiff here argues that defendants

regarded him as an alcoholic, and concluded that he could not work at the LCCF

because of this condition.  This perception allegedly means that defendant regarded

plaintiff as substantially limited in the major life activity of working and qualifies him

for protection under the ADA.

Here, defendants contend that plaintiff cannot be regarded as having a

disability because under the ADA they have a right to prohibit him from working while

under the influence of alcohol.  Under the ADA, "a covered entity (1) may prohibit the

. . . use of alcohol at the workplace by all employees [and] (2) may require that

employees shall not be under the influence of alcohol . . . at the workplace."  42

U.S.C. § 12114(c)(1-2).   To the extent that plaintiff was drinking, then, he could not

qualify for protection under the Act.

The court agrees with the defendants that plaintiff cannot gain the protections

of the ADA on the basis of his claim that he was regarded as alcoholic.  Plaintiff

presents no evidence that at the time the defendants took an adverse employment

action against him that they regarded him as an alcoholic.  Instead, plaintiff presents

evidence by which a reasonable juror could conclude that defendants manufactured

a false positive on a breathalyzer result in order to create an excuse to fire the

defendant.  Such evidence is not evidence, however, that defendants perceived

plaintiff as an alcoholic, but evidence that they were willing to manipulate

employment practices in the prison in order to relieve plaintiff of his job.  Plaintiff thus

offers no evidence that defendants perceived him as an alcoholic.  Indeed, he

admitted in his deposition that defendants did not regard him as an alcoholic until

after they allegedly found him under the influence of alcohol at work.  Since plaintiff

does not argue that he is a qualified individual with a disability on other

grounds–such as the limitations he suffered from his previous injury–the court

cannot find that plaintiff is entitled to the protections of the ADA.  The court will

sustain the defendants' objections and grant them summary judgment on this claim.

### iii.  Equal Protection

Defendants also contend that the magistrate judge erred in finding that plaintiff

had an equal protection claim which could survive summary judgment.  Defendants

contend that plaintiff did not raise such a claim in his complaint, and that the

magistrate judge therefore created one in his report and recommendation.  Because

plaintiff never pled such a complaint, he cannot now raise one.

19

The complaint does not lay out clearly the grounds for any equal protection claim that the plaintiff may have, but other filings indicate that the parties were aware of the potential of an equal protection claim. Count I of plaintiff's amended complaint alleges that all defendants "deprived the Plaintiff of the rights, privileges and immunities secured to the Plaintiff by the First, Fifth, and Fourteenth Amendments." (Amended Complaint (Doc. 9) at ¶ 58). The complaint also alleges that "Plaintiff was denied emergency vacation time while others no[t] in the protected class were granted it." (Id. at ¶ 29). In disposing of defendants' motions to dismiss, the magistrate judge noted that "[n]one of the parties address whether the amended complaint states a § 1983 Fourteenth Amendment equal protection claim upon which relief can be granted. Therefore, neither will we." (Report and Recommendation (Doc. 47) at 20 n.5). In his brief in opposition to the defendants' motions for summary judgment, the plaintiff argued that none of the parties challenged his equal protection claim, and that "therefore the Fourteenth Amendment Claim for Equal Protection remains a triable issue." (Brief in Opposition to Defendants' Motion for Summary Judgment (Doc. 82) at 9). The defendants did not address this contention in their reply briefs. Apparently convinced that defendants did not intend to challenge any potential equal protection claim, the magistrate judge concluded that trial on that issue was appropriate.

The court concludes that the plaintiff did not state his equal protection claim with any degree of particularity in his complaint. Defendants' failure to address the

issue in their motions for summary judgment, therefore, should not be fatal on this issue.  At the same time, however, the magistrate judge recognized the potential for such a claim and addressed the issue in his report and recommendations.  None of the parties, however, have ever substantively examined the equal protection issue and the evidence pertaining to it.  The court desires to avoid having the outcome of this case turn on pleading skill, and will give the parties an opportunity to examine the evidence.  Accordingly, the court will grant leave to the defendants to file supplemental motions for summary judgment and briefs in support of those motions on this issue, if they so desire.  The defendants should address whether plaintiff successfully plead the equal protection issue and whether any evidence exists by which a jury could conclude that defendants violated plaintiff's rights on this issue. The defendants shall file this motion within twenty (20) days of the date of this order. Failure to do so will cause the court to consider the issue waived and the court will schedule trial on that claim.

### B.  The Union Defendants

The union defendants also raise objections to the report and recommendation. They contend that the magistrate judge erred in finding that an equal protection claim should go forward against any of the defendants.  Like the county defendants, the union defendants insist that plaintiff did not anywhere plead an equal protection claim.  As such, finding that they had agreed that they should not obtain summary judgment on such a claim was an error.  In addition, the magistrate judge found that

Defendant Seiwell was not a state actor, and he therefore cannot be liable for an equal protection violation.  Finally, even if the court were to conclude that plaintiff had made out an equal protection claim in his complaint, the defendants' motion for summary judgment included any such claim.

The court notes that only the equal protection claims against the union defendants remain in the case.  For the reasons stated above, the court will grant leave to these defendants to file a supplemental motion addressing the viability of plaintiff's equal protection claim.  Defendants shall file said motion within twenty (20) days of the date of this opinion.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD A. MAJEWSKI,** | : | **No. 3:05cv2396** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **LUZERNE COUNTY,** | : | |
| **LUZERNE COUNTY CORRECTIONAL** | : | |
| **FACILITY,** | : | |
| **GENE FISCHI,** | : | |
| **SAMUEL HYDER,** | : | |
| **ROWLAND ROBERTS,** | : | |
| **TONY SEIWELL,** | : | |
| **INTERNATIONAL LABORER'S** | : | |
| **UNION OF NORTH AMERICA LOCAL** | : | |
| **1300,** | : | |
| **GREGORY SKREPENAK,** | : | |
| **TODD VONDERHEID,** | : | |
| **STEVE URBAN,** | : | |
| **WEBSTER YUHAS, and** | : | |
| **ROBERT PAYNE,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### ORDER

**AND NOW**, to wit, this 30th day of September 2008:

1. The defendants' objections (Docs. 87, 90) to the report and

recommendation of Magistrate Judge J. Andrew Smyser (Doc. 86) are hereby

**SUSTAINED** in part and **OVERRULED** in part;

2. The report and recommendation is **NOT ADOPTED** with respect to

23

plaintiffs' First Amendment retaliation and Americans with Disabilities Act

claims and the magistrate judge's finding that summary judgment should be

denied on plaintiff's equal protection claim;

3.  The defendants' motions for summary judgment[5] (Docs. 66, 70) are hereby

**GRANTED**;

4.  The defendants are hereby **GRANTED LEAVE** to file supplemental

motions for summary judgment in relation to plaintiff's equal protection claims

within twenty (20) days of the date of this order; and

5.  Failure to file said motions will cause the court to schedule trial on plaintiff's

equal protection claims.

**BY THE COURT:**


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**

---

[5]The court concludes that the magistrate judge considered these motions to be partial motions for summary judgment which did not include plaintiff's equal protection claim.

24